UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

JOHN DOE,

                            Plaintiff,                Case No. 1:17-cv-06656

    v.

                                                          Judge: Andrea R. Wood

LAW SCHOOL ADMISSION COUNCIL, INC.,
A Delaware corporation.                        Magistrate Judge:
                                                          Daniel G. Martin

                            Defendant.

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

      Now Comes the Plaintiff, John Doe, by and through his attorney M. James Salem, who submits this Memorandum of Law in support of his motion for preliminary injunction, together with the Complaint (Doc. 1), the Plaintiff's Affidavit in Support, with **Exhibits A, B, C & D**, and states the following:

**INTRODUCTION**

      On September 15, 2017, Plaintiff commenced this action to compel LSAC to provide the accommodations that his doctors recommend, and that he received in high school for standardized exam and his IEP reports recommend. LSAC denied Plaintiff's requested accommodations by unreasonably discounting expert doctors and qualified professionals' diagnosis, their documentations and their recommended accommodations for Plaintiff. After the Complaint was filed, LSAC also rejected Plaintiff's updated IEP Report, **Exhibit D**, that shows he took the college entrance exam, ACT, with greater accommodations as requested herein. It is LSAC's stated and written policy to give the same accommodations for the LSAT that a student had for the ACT, s**ee Exhibit C**.

1

This action seeks an injunction compelling LSAC to provide Plaintiff with the accommodations that all doctors, professionals and Plaintiff's IEP reports recommends. LSAC must permit Plaintiff to take the December LSAT over a three-day period, where each of the six sections is taken over three (3) hours, at a facility within ten (10) miles of Plaintiff's home, with an isolated and non-distraction room, together with deleting all record of Plaintiff's prior attempts to take the LSAT.

## STATEMENT OF RELEVANT FACTS

The relevant undisputed facts at apply to the injunction issue are contained in the Complaint (Doc. 1), Plaintiff's Affidavit in Support of Motion for Preliminary Injunction and **Exhibits A, B, C & D**, to Plaintiff's Affidavit in Support of Preliminary Injunction.

## STANDARD FOR INJUNCTION

Plaintiff need only show that "it has a 'better than negligible' chance of succeeding on the merits." *Meridian Mutual Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1114 (7th Cir. 1997). In determining whether to grant injunctive relief, "the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Optionmonster Holdings, Inc. v. Tavant Techs., Inc.,* No. 10 C 2792, 2010 WL 2639809, at *10 (N.D. Ill. June 29, 2010) (citation omitted). If there is irreparable harm, it must be balanced against the harm that the nonmoving party will suffer if the injunction were to issue. The balancing is not mathematical, but intuitive. *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 678 (7th Cir. 2012).

An injunction is appropriate when a party demonstrates (1) some likelihood of succeeding on the merits, and (2) that it has "no adequate remedy at law" and will suffer

"irreparable harm" if preliminary relief is denied. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). In weighing these factors, the courts apply a "sliding scale" approach where "the stronger the case is on the merits, the less irreparable harm that must be shown." *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1172 (7th Cir. 1997).

## **ARGUMENT IN SUPPORT OF INJUNCTION**

All prior case law opposing counsel referenced has been superseded by the recent March 22, 2017, decision in the U.S. Supreme Court, *Endrew F. v. Douglas County School District*, 580 U.S. __ (2017). The case dealt with the Individuals with Disabilities Education Act (IDEA), but it is applicable in this ADA case to the extent that Plaintiff's IEP report determines the proper accommodations. In this case, Plaintiff's IEP report, **Exhibit D**, clearly shows the accommodations Plaintiff was receiving in high school for standardized exams. There is no other IEP report that supersedes it and there is no qualified professional or doctor disagreeing with the report to any extent. In fact, Plaintiff's primary doctor and a retained expert doctor both support and agree with the accommodations in the IEP report. The U.S. Supreme Court stated:

> The Individuals with Disabilities Education Act (IDEA or Act) offers States federal funds to assist in educating children with disabilities. 84 Stat. 175, as amended, 20 U. S. C. §1400 et seq.; see Arlington Central School Dist. Bd. of Ed. v. Murphy, 548 U. S. 291, 295 (2006). In exchange for the funds, a State pledges to comply with a number of statutory conditions. Among them, the State must provide a free appropriate public education—a FAPE, for short—to all eligible children. §1412(a)(1).
>
> A FAPE, as the Act defines it, includes both "special education" and "related services." §1401(9). "Special education" is "specially designed instruction . . . to meet the unique needs of a child with a disability"; "related services" are the support services "required to assist a child . . . to benefit from" that instruction. §§1401(26), (29). A State covered by the IDEA must provide a disabled child with such special education and related services "in conformity with the [child's] individualized education program," or IEP. §1401(9)(D).

The Supreme Court sided with the disabled student's IEP report in what accommodations should be provided.  In this case, Plaintiff's IEP has been determined in his high school, **Exhibit D**, and his primary doctor's February 10, 2017 evaluation, as well as the expert doctor's July 25, 2017 evaluation, **Exhibits A&B**, all agreed on the accommodations that should be provided.  **Exhibit D** is the latest IEP that exists for Plaintiff.  LSAC must, by law, "meet the *unique* needs" of Plaintiff's disability.  Chief Justice John G. Roberts Jr. stated that a child's "educational program must be appropriately ambitious in light of his circumstances" and that "every child should have the chance to meet challenging objectives."  Many legal scholars have commented on how the above cited Supreme Court's decision has greatly expanded students with disabilities' rights and the scope of the accommodations they should receive.

In this case, Plaintiff's updated IEP has been determined in his high school, **Exhibit D**, and **Exhibit C** is Plaintiff's candidate form showing that it is LSAC's policy to give the same LSAT accommodations as the student had on the ACT exam.  **Exhibit D**, on second page, numbered "page 4," shows Plaintiff took the standardized exams one section at a time "over multiple days."  However, on the fourth page of **Exhibit D**, numbered "page 6," it states: "Extended time to complete tests – Time and a half and over multiple days as needed."  LSAC's counsel has interpreted this to mean that Plaintiff was only allowed time and a half extension.  However, this is a boilerplate statement that shows the range of extension of time that can be given, *as needed*.  Where time and a half is the minimum extension and multiple days is the maximum extension of time given.  The statement has a box in front of it to be checked if this range applies – the box is checked.  However, the actual extension of time is on "page 4" that clearly shows for each section multiple days were given as extension of time.  The "page 4" statement does NOT have a box in front of it to be checked.  It is typed-in-words of the accommodations to be given.  There

4

are many boilerplate statements in the IEP report with boxes in front of them, but clearly the second page of **Exhibit D**, "page 4," shows the time of extension was typed in and not checked off.

The IEP Report, **Exhibit D**, contains many boilerplate statements where the teacher simply checks applicable boxes. In this case, the box checked describes as the "extended time to complete tests," followed by — and then by two elements or two possibilities: "Time and a half *and* over multiple days as needed." This indicates that the teacher can, as needed extend the time over time and a half *and* over multiple days, as needed. It does not state: "time and a half over multiple days," which may be interpreted as LSAC's counsel claims. The word "*and*" connects two elements, two options, two choices: 1) time and a half, *and* 2) over multiple days, which the teacher can use *as needed*.

In addition, the two elements are the minimum and maximum extensions of time typically given to students. Thus, grammatically is would make sense that when the extension of time could be minimum and maximum as needed, it would not mean that the minimum was the extension of time. Nonetheless, this was a boilerplate statement with a box to be check that gave the range of extensions of time that could apply. The actual time given in Plaintiff's case is shown on the second page of **Exhibit D**, "page 4," which clearly show each section was given "over multiple days" because each section was listed and next to each section it was type written "over multiple days. In addition to the IEP Reports, **Exhibit D**, there exists testimony by Plaintiff, with first-hand knowledge, who took the exams where each section was given over the entire day. LSAC has no evidence to refute this fact.

In addition to Plaintiff's qualified doctors who recommended the accommodations, the professionals in Plaintiff's high school were also qualified to determine the proper accommodations in his IEP report:

> 34 CFR **§ 300.18 Highly qualified special education teachers.**
>
> **(a)***Requirements for special education teachers teaching core academic subjects.* For any public elementary or secondary school special education teacher teaching core academic subjects, the term *highly qualified* has the meaning given the term in section 9101 of the ESEA and 34 CFR 200.56, except that the requirements for highly qualified also -
>
> **(1)** Include the requirements described in paragraph (b) of this section; and
>
> **(2)** Include the option for teachers to meet the requirements of section 9101 of the ESEA by meeting the requirements of paragraphs (c) and (d) of this section.

The qualifications of LSAC's agents who made the decision to reject the accommodations are unknown. Even if they have the same qualifications as the qualified professionals in Plaintiff's high school, they never met with Plaintiff, never interviewed his primary medical doctor, or the expert doctor; they do not have any first-hand knowledge of Plaintiff's disability. LSAC's agents who rejected Plaintiff's accommodations did not spend four years in high school with Plaintiff with develop the IEP report that currently exists, **Exhibit D**. In addition, LSAC has not provided any rationale as to why Plaintiff's IEP report and his doctors' diagnosis and their recommended accommodations are not proper. LSAC must provide an explanation as to why the accommodations that Plaintiff has been receiving throughout his elementary school and high school education are what is currently required under the Americans with Disability Act.

It is Plaintiff's expert doctor's contention, in her July 25, 2017 report, **Exhibit A**, that based on her diagnosis, evaluation and her first-hand knowledge of Plaintiff, his history, his medical record and his childhood primary medical doctor that Plaintiff has a disability that requires the accommodations he has been receiving in his elementary school and in his high

school for standardized exams. The expert doctor's evaluation is based on objective evidence that she describes in her September 5, 2017 report, **Exhibit B**.

It is difficult to understand LSAC's denial when there is no doctor or qualified person who evaluated Plaintiff, throughout his entire life, who made a diagnosis contradicting the diagnosis by the expert doctor or Plaintiff's primary doctor or the professionals who generated Plaintiff's IEP. Yet, LSAC continues to deny Plaintiff's accommodations without any rational justification. In addition, it is LSAC's stated and written policy to give the same accommodations to students that they received for their ACT standardized exam. In applying for accommodations, on Plaintiff's "candidate form," **Exhibit C**, LSAC asks whether Plaintiff received accommodations for prior "eligible tests," which include the ACT. LSAC also asks if Plaintiff was approved for such accommodations and if so to submit "proof of the specific accommodations." Plaintiff submitted **Exhibit D,** his IEP report as proof. Yet LSAC refuses to grant the accommodations in Plaintiff's IEP report without any justification.

Overwhelming and undisputed evidence exists that show Plaintiff has a better than negligible chance of succeeding on the merits. In fact, he has overwhelming evidence to succeed with his IEP reports, his doctor's recommendations and his testimony on the accommodations he received for the ACT.

If Plaintiff is not given the opportunity to take the LSAT in December, 2017, and have his score published soon thereafter, he will be deprived the opportunity to apply to the only school that has a January 2018 class starting, John Marshall. Plaintiff will miss an entire school-year, rather than miss only half a school-year. In other words, Plaintiff seeks the requested accommodations be provided for the December, 2017, LSAT exam in order to have the same opportunity to apply that nondisabled students have. There simply is no adequate remedy at law

7

to replace a half a year education and career opportunity. Plaintiff will suffer irreparable harm if this injunctive relief is denied. Rather than have lost an entire year of education, which is irreplaceable, Plaintiff will lose only a half a year if he is allowed to take the December, 2017, LSAT, or at the very least he will have the same opportunity to apply as nondisabled students. In Plaintiff's Affidavit, he has shown that he can score much higher on the LSAT than the average LSAT score at John Marshall, together with his high G.P.A., it is very likely that he will be accepted.

     Finally, LSAC has agreed in another federal court action not to reveal any derogatory information about disabled students taking the LSAT or even that accommodations were provided. *The Department of Fair Employment and Housing v. LSAC,* Case No. 12-1830-EMC, Northern District of California, San Francisco Division. In this case, Plaintiff has made three prior attempts to take the LSAT with the proper accommodations, but he was denied. This information, on his record, is derogatory and since LSAC has already agreed not to publish such information in the other federal court action. *Id*., then it must delete all record of Plaintiff's prior attempts to take the LSAT.

## CONCLUSION

     On the basis of the foregoing, together with Plaintiff's Affidavit in Support and Complaint, the accommodations Plaintiff requires are clearly described in his doctor's report, **Exhibit A&B**, and his IEP report, **Exhibit D**. There is no qualified individual or IEP report that contradicts these facts. The Supreme Court made it clear that ADA requires that LSAC provide such accommodations and this Court should enter an order compelling the LSAC to provide the accommodations requested to take the December LSAT over a three-day period, where each of the six sections is taken over three (3) hour-period, at a facility within ten (10) miles of

Plaintiff's home, in an isolated non-distraction room, together with releasing the score within one or two days after the exam is taken, together with deleting all record of Plaintiff's prior attempts to take the LSAT where the proper accommodations were not provided.

Dated: October 23, 2017

                Respectfully submitted,

                /s/M. James Salem,
                Attorney for Plaintiff
                7156 West 127th Street, B-149
                Palos Heights, IL. 60463
                Tel. (708) 277-4775
                salemlaw@comcast.net

**CERTIFICATION OF SERVICE**

  I, M James Salem, am the attorney for Plaintiff and I hereby certify that I served a true copy of the above Memorandum in Support of Injunction on Defendant's counsels by electronic means via the Court's CM/ECF system, and email, robert.burgoyne@nortonrosefulbright.com, on October 23, 2017.

                   /s/ M James Salem