IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | Case No.17-cv-06656 |
| Plaintiff, | ) | |
| v. | ) | Judge Andrea Wood |
| | ) | |
| LAW SCHOOL ADMISSIONS COUNCIL, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S EMERGENCY MOTION TO SUPPLEMENT
THE PRELIMINARY INJUNCTION HEARING RECORD AND FOR SANCTIONS**

Plaintiff's pending preliminary injunction motion, and his underlying lawsuit, are premised on the allegation that LSAC "unreasonably discount[ed]" his "expert doctors and qualified professionals' diagnosis, their documentation and their recommended accommodations for Plaintiff." *See* Pl. Mem. of Law in Supp. of Motion for Prel. Inj. at 1 (Dkt. 21) ("Prel. Inj. Mem."). Two doctors are referenced in Plaintiff's papers– his "primary doctor" (Robin Snead) and his "expert doctor" (Diane Egan) – but he relies primarily on diagnoses that purportedly were made by Dr. Egan, *id.* at 6-7, as set forth in two letters that he has submitted to the Court. *See* Plaintiff's Affidavit in Supp. Of Motion for Prel. Inj. Exs. A & B ("Pl's Prel. Inj. Aff."). During the hearing on Plaintiff's preliminary injunction motion, held on November 20, 2017, LSAC noted that neither Dr. Snead nor Dr. Egan had come forward to testify on Plaintiff's behalf, in person or by declaration. LSAC also noted that LSAC's effort to subpoena the records of Dr. Snead and Dr. Egan in advance of the hearing had not been successful, and that calls to their offices had not yet been returned. Those facts, and certain aspects of the letters themselves, suggested that the Snead and Egan letters relied upon by Plaintiff were not actually written by Dr. Snead or Dr. Egan.

Two days after the hearing, and in response to the third-party subpoena that she received from LSAC, Dr. Egan contacted LSAC's counsel. As a result, LSAC is now in a position to address the two letters thatwere purportedly prepared by Dr. Egan. LSAC respectfully requests that the Court consider the Declaration of Diane L. Eganwhich is attached hereto as **Exhibit I** ("Egan Decl.") as part of the record for Plaintiff's preliminary injunction motion. While the existing record amply supports denying that motion, Dr. Egan's Declaration removes any possible doubt.

LSAC further requests that the Court sanction Plaintiff and his counsel for submitting fabricated evidence to the Court. Specifically, LSAC requests that the Court dismiss Plaintiff's complaint with prejudice and require Plaintiff to reimburse the legal fees LSAC has incurred to defend this lawsuit. In support of this motion, LSAC respectfully states as follows:

## INTRODUCTION

1.      Plaintiff and his counsel have attempted to perpetrate a fraud on this Court and LSAC. Specifically, in support of his request for accommodations from LSAC, his Complaint, and his motion for a preliminary injunction, Plaintiff has submitted two letters – one dated July 25, 2017 (the "July 25 Letter") and the other dated, September 5, 2017 (the "September 5 Letter") (collectively, the "Letters") – that purportedly were written by Diane L. Egan as "proof" that he has an Attention Deficit Disorder and an emotional disturbance that warrant the accommodations he has requested on the LSAT exam. The Letters are attached as Exhibits A and B to the Affidavit that Plaintiff has submitted to the Court, under seal and "under the penalty of perjury," in support of his preliminary motion. The July 25 Letter has Dr. Egan's handwritten signature, while the September 5 Letter only has a typed signature ("/s/ Dr. Diane Egan").*See* Pl's Prel. Inj. Aff., Exs. A & B.

2.      The Letters are fraudulent. Dr. Egan – who is a "professional nutritionist and naturopath" (Egan Decl.¶ 1) (Ex. I hereto) – did not draft either Letter. (*Id.* ¶¶ 5 and 8.). Dr. Egan *never* diagnosed Plaintiff "as having an attention deficit disorder, an emotional disturbance, or any other impairment." (*Id.* ¶ 7.). She is "not trained to formally diagnose mental impairments such as attention deficit disorders" and does not "conduct the type of comprehensive evaluations that would be needed to provide such a diagnosis." (*Id.*¶ 8.)

3.      Dr. Egan has acknowledged signing the July 25 Letter, and may have made minor changes to the text, but she did not draft the letter and believes that it was written by Plaintiff's father. (*Id.*¶ 5). She was asked to sign it and did so, and now realizes that was a mistake. (*Id.*)

4.      The September 5 Letter is a complete fabrication. Dr. Egan did not write it, authorize anyone to write or send it, or authorize anyone else to sign it on her behalf. (*Id.* ¶ 9.)

5.      Knowing that the letters were not genuine, Plaintiff and his counsel introduced them as evidence at the preliminary injunction hearing in an effort to induce the Court into finding that (a) Plaintiff has ADD and an emotional disturbance; and (b) requires three hours to complete each 35 minute section of the LSAT.[1]

### BACKGROUND

6.      LSAC provides accommodations on the Law School Admission Test ("LSAT") to individuals whose documentation demonstrates that they have a disability within the meaning of the Americans with Disabilities Act ("ADA") and need accommodations in order take the LSAT in an accessible manner. Based upon the supporting documentation that Plaintiff submitted to LSAC, LSAC authorized Plaintiff to receive 100% extra testing time and other accommodations.

---

[1] The September 5 Letter was initially submitted to LSAC in support of an appeal by Plaintiff from LSAC's decision not to grant him all of the accommodations he requested. It was submitted under a cover letter of the same date from Plaintiff's counsel, which stated: "Dr. Diana Egan has … submitted a report in support of [Plaintiff's] appeal, dated September 5, 2017, and attached hereto." *See* **Exhibit 2** hereto at 1.

3

7.      Despite being approved for those accommodations, Plaintiff filed the present action on September 15, 2017, accusing LSAC of violating the ADA. *See* Complaint ¶ 1 (Dkt. 1). According to Plaintiff, he was "evaluated and thoroughly diagnosed" by "an expert doctor in his area of disability," and the"expert doctor's report ultimately agreed with Plaintiff's primary doctor's diagnosis and … also formally diagnosed Plaintiff with Attention Deficit Disorder." *Id.* ¶ 19 (referring to Dr. Egan). Based on the diagnosis and recommendation of that "expert doctor," an IEP report that does not actually support his position, and his alleged receipt of certain accommodations on the ACT exam that documentary evidence has since contradicted, Plaintiff asserted that LSAC violated the ADA by only providing Plaintiff with 100% additional testing time to take the LSAT, instead of allowing Plaintiff to take each of the five multiple choice sections and the one written section of the LSAT on six separate days with a full day of testing time for each section.

8.      On October 23, 2017, Plaintiff filed a motion for preliminary injunction, asking the Court to order LSAC to allow Plaintiff to take the LSAT on December 2, 2017 with the following accommodations:

- Three hours testing time per section
- Test over three days instead of one
- Take two sections per day
- Test in a private room
- Test within ten (10) miles of his home
- Have all of his prior attempts at the LSAT deleted from his record

(Dkt. 20 at 1). Plaintiff also asked LSAC to provide a one-hour "lunch break between sections." (Dkt. 21 at Ex. C).

4

9.      In support of his preliminary injunction motion, and as attachments to his Affidavit, Plaintiff submitted the Egan Letters as evidence of his purported disabilities and his need for such extraordinary accommodations. (Pl's Prel. Inj. Aff., Exs. A & B.)

10.      On November 20, 2017, the Court conducted a preliminary injunction hearing. Plaintiff testified at the hearing and offered the Egan Letters into evidence. Plaintiff testified that he met Dr. Egan one time, but did not know how either Letter was prepared or came into his counsel's possession. Plaintiff further testified that he did not know if the Letters were emailed to his counsel, sent by mail, or hand delivered (assuming they were delivered at all). According to Plaintiff, his counsel had obtained the Letters.[2]

11.      Although Dr. Egan lives and works in the local area, Plaintiff did not subpoena her to testify at the preliminary injunction hearing.[3]

12.      After the hearing, one of LSAC's attorneys received a telephone call from Dr. Egan regarding the records subpoena that had been served on her. Dr. Egan agreed to provide a declaration regarding the Letters. In her declaration, attached as **Exhibit 1** hereto, Dr. Egan states under oath that:

- She is a nutritionist and naturopath;

- She did not draft either Letter;

- She signed the July 25 Letter, but was not sure of its purpose;

- She realizes now it was mistake to have signed the July 25 Letter;

---

[2] **[REDACTED UNTIL COURT RULES ON PLAINTIFF'S MOTION TO APPEAR USING PSEUDONYM]** Plaintiff also testified that the letter he sent to DePaul University wherein he stated that he was given 100% additional testing time to take the ACT exam in high school was jointly drafted by Plaintiff and his counsel. Counsel attempted to explain the discrepancy between what he co-drafted in the letter to DePaul and Plaintiff's request for unlimited time on the LSAT as a "typo."

[3] As the Court knows, Plaintiff did subpoena another witness to testify at the hearing, who is a special education teacher from his high school.

5

- She only met Plaintiff one time and it was not for the purpose of evaluating and diagnosing him for any disorders;

- She never diagnosed Plaintiff with ADD, an emotional disturbance or any other disorder;

- She is not trained to diagnose Plaintiff (or anyone else) with ADD, emotional disturbance or any other mental disorders;

- The July 25 Letter contains false statements concerning her having diagnosed Plaintiff with ADD and an emotional disturbance; she did not do so, for "the purpose of determining the accommodations he should receive for taking a standardized exam" or any other purpose; and

- She did not sign the September 5 Letter, had no role in preparing it, and did not authorize Plaintiff or his counsel to sign or send the letter on her behalf.

## ARGUMENT

### I.     The Court Should Supplement the Record with the Egan Declaration

13.     The Court should supplement the record with the Egan Declaration. The Egan Declaration is directly relevant and totally discredits Plaintiff's attempted reliance on the Letters. In addition, and more fundamentally, it exposes Plaintiff's entire lawsuit as a sham.

### II.     The Court Should Sanction Plaintiff and His Counsel

14.     The Court also should also sanction Plaintiff and his counsel.

15.     "[I]t is settled that federal courts have inherent powers to sanction litigants for bad-faith and fraudulent conduct related to federal cases. These powers 'are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *REP MCR Realty, LLC v. Lynch*, 363 F. Supp. 2d 984, 998 (N.D. Ill. 2005) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)), *aff'd*, 200 Fed.Appx. 592 (7th Cir. 2006) (affirming lower court's dismissal of third-party complaint with prejudice, and its award of almost $370,000 in fees and costs).

6

16.     Although a court should consider whether a lesser sanction might be warranted, dismissal with prejudice is appropriate when a party has engaged in particularly egregious conduct, such as "document fabrication and/or perjury." *REP MCR Realty,* 363 F. Supp. 2d at 998, 1010-14; *see also Diettrich v. Northwest Airlines, Inc.,* 168 F.3d 961, 964 (7th Cir.1999) (noting that courts have the power to dismiss a complaint with prejudice as a sanction for inappropriate litigation conduct). *Kovilic Constr. Co., Inc. v. Missbrenner,* 106 F.3d 768, 773 (7th Cir.1997).

17.     In *REP MCR Realty,* "the Court considered the possibility of lesser sanctions," such as excluding the faked documents, but concluded that "such a sanction would be inadequate and hollow." 363 F. Supp. 2d at 1013. The same conclusion is warranted here. As in that case, the Court should agree with "precedent finding that when a litigant fabricates critical evidence, the interests of the judicial system militate strongly in favor of dismissal of the suit so as to deter all litigants from such misconduct in the future." *Id.* (citations omitted).

18.     Dismissal with prejudice also is warranted under Fed. R. Civ. P. 11. *See, e.g., Jimenez v. Madison Area Technical College,* 321 F.3d 652 (7th Cir. 2003) (affirming lower court's dismissal of complaint with prejudice where plaintiff had "relied on falsified documents" to support her discrimination claims). While a party must give thirty (30) days' notice before filing a motion under Rule 11, a court on its own initiative may order an attorney or party to show cause why sanctions are not warranted for a violation of Rule 11(b). *See* Fed. R. Civ. P. 11(c)(3).

19.     The Court also should order Plaintiff and his counsel to reimburse LSAC's legal fees. The Court's inherent authority to sanction parties for abusing the judicial process includes the authority to order the offending party to "reimburse legal fees and costs incurred by the other

7

side." *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017).[4] "[S]uch a sanction, when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature.... That means ... that the court can shift only those attorney's fees incurred because of the misconduct at issue...." *Id.* The requisite "causal connection ... is appropriately framed as a but-for test: The complaining party . . . may recover 'only the portion of his fees that he would not have paid but for' the misconduct. . . . A fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned." *Id*. at 1187 (citation omitted).

20.     Here, application of this "but-for" test supports an award of LSAC's full legal fees and expenses in defending against Plaintiff's claims. Plaintiff relied upon the fabricated evidence to support his Complaint. (Dkt. 1 at ¶¶ 12, 15, 16, 19). He then filed a series of misguided motions (consisting of a motion for partial summary judgment, a motion for permanent injunction, and a motion for a preliminary injunction), with attendant court appearances, in which he again relied upon the fabricated Letters from Dr. Egan. Indeed, he relied upon the fabricated Letters in seeking accommodations from LSAC, prior to filing this lawsuit. Thus, from the outset of this case, fabricated evidence has been at the heart of Plaintiff's claims, and LSAC has incurred tens of thousands of dollars in legal fees in defending against those claims. An award of full fees is therefore warranted. *See* Goodyear, 137 S. Ct. at 1187 ("If a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award.").

21.     The fabricated documents that Plaintiff has submitted to the Court are central to his claims against LSAC. The Court should sanction Plaintiff and his counsel to protect the

---

[4]An award of fees is also warranted under 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.")

sanctity of the Court, to compensate LSAC for the expense it has incurred as a result of

Plaintiff's actions, and to deter others from engaging in similar conduct.

Wherefore, based on the foregoing, LSAC respectfully requests that the Court enter an

order: (1) supplementing the record of the preliminary injunction hearing with the Egan

Declaration; (2) denying the motion for preliminary injunction; (3) dismissing Plaintiff's lawsuit

with prejudice; (4) awarding LSAC its attorneys' fees incurred in connection with this lawsuit;

and (5) granting such other relief as the Court deems just and proper.

Dated: November 27, 2017                    Respectfully Submitted,

                                              LAW SCHOOL ADMISSIONS COUNCIL

                                              By: /s/ Jonathan M. Cyrluk

Jonathan M. Cyrluk
Steven C. Moeller
CARPENTER LIPPS& LELAND LLP
180 North LaSalle Street, Suite 2105
Chicago, Illinois 60601
312.777.4826
cyrluk@CarpenterLipps.com

Robert A. Burgoyne (*pro hac* admission)
Norton Rose Fulbright US LLP
799 9th Street, NW, Suite 1000
Washington, D.C. 20001
Robert.burgoyne@nortonrosefulbright.com

Attorneys for LSAC

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on November 27, 2017, he electronically filed and servedon all counsel of record the foregoing **EMERGENCY MOTION TO SUPPLEMENT THE PRELIMINARY INJUNCTION HEARING RECORD AND FOR SANCTION**with the Clerk of the Court using the CM/ECF system.

/s/ Jonathan M. Cyrluk
Jonathan M. Cyrluk