**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|                                          |     |                        |
| ---------------------------------------- | --- | ---------------------- |
| JOHN DOE,                                | )   |                        |
|                                          | )   |                        |
|     Plaintiff,       | )   |                        |
|                                          | )   | No. 17-cv-06656        |
|     v.               | )   |                        |
|                                          | )   | Judge Andrea R. Wood   |
| LAW SCHOOL ADMISSION COUNCIL INC.,       | )   |                        |
|                                          | )   |                        |
|     Defendant.       | )   |                        |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff John Doe alleges that Defendant Law School Admission Council, Inc. ("LSAC") violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12189, by failing to provide him proper accommodations for the Law School Admission Test ("LSAT"). Doe filed this suit against LSAC seeking damages, as well as injunctive relief pursuant to 42 U.S.C. §§ 2000a-3 and 12188(a)(2). Pursuant to Federal Rule of Civil Procedure 11 and this Court's inherent sanctioning authority, LSAC has moved for sanctions (Dkt. No. 38) against Doe and his counsel, Maurice James Salem ("Attorney Salem"), for submitting fraudulently prepared exhibits in support of Doe's motion for a preliminary injunction (Dkt. No. 21). Pursuant to Rule 11, Doe has filed a cross-motion for sanctions against LSAC and its counsel, Robert A. Burgoyne ("Attorney Burgoyne"), alleging that Burgoyne threatened Doe's expert witness to obtain a false declaration from her. (Dkt. No. 68.) The Court held evidentiary hearings regarding the parties' cross-motions for sanctions on July 17, 2018, and August 6, 2018. (Dkt. Nos. 103, 109.) Based on the evidentiary record and for the reasons described below, the Court grants in part and denies in part LSAC's motion and denies Doe's motion.

## BACKGROUND

John Doe[1] has filed this action against LSAC alleging various violations of the ADA and seeking injunctive relief requiring LSAC to provide him with his requested testing accommodations. Doe argues that LSAC violated the ADA by employing a vague, unreasonable, and subjective standard in determining which professionals are qualified to recommend accommodations on behalf of LSAT test takers.

On October 23, 2017, Doe moved for a preliminary injunction requesting that the Court order LSAC to allow him to take the December 2017 LSAT over a three-day period in an isolated place within ten miles of his home, release his exam score within one day of when he completed the test, and expunge all records of his prior LSAT scores. (Dkt. No. 20.) Doe's memorandum in support of his motion includes several exhibits, including his high school Individualized Education Program report ("IEP") and two letters from Dr. Diane Egan[2] recommending accommodations for Doe's emotional disturbance and attention-deficit disorder. (Dkt. No. 21.) LSAC filed its opposition to Doe's motion for a preliminary injunction on November 6, 2017 (Dkt. No. 29), to which Doe replied one week later. (Dkt. No. 31.)

The Court held a preliminary injunction hearing on November 20, 2017. (Dkt. No. 42.) On November 27, LSAC submitted a motion to supplement the preliminary injunction hearing record and to ask this Court, pursuant to Rule 11 and the Court's inherent authority, to impose sanctions upon Doe and his counsel, Attorney Salem, for fabricating evidence. (Dkt. No. 38.) LSAC

---

[1] The Court previously granted Plaintiff John Doe leave to proceed anonymously in this case because of the personal medical issues it raises. (*See* Sept. 30, 2018 Order, Dkt. No. 116.)

[2] Doe's amended complaint refers to Dr. Egan as "Dr. Diana Egan." (Am. Compl. ¶ 21, Dkt. No. 56.) Dr. Egan submitted a declaration that spells her first name "Diane." (*See* Def.'s Emergency Mot. to Suppl. the Prelim. Inj. Hr'g R. and for Sanctions ("Def.'s Sanctions Mot."), Ex. 1, Dr. Diane L. Egan Decl. ("Egan Decl."), Dkt. No. 38-1.) For the purposes of this Opinion, the Court uses Dr. Egan's own spelling of her first name.

included with its motion a declaration signed by Dr. Egan dated November 21, 2017, disavowing the two letters Doe submitted to LSAC under her name. (*See* Def.'s Sanctions Mot., Ex. 1, Egan Decl.) Dr. Egan declares under penalty of perjury that she signed the first letter, dated July 25, 2017 ("July 25 Letter"), but never drafted, signed, or authorized another person to sign the second letter, dated September 5, 2017 ("September 5 Letter"). (*Id.* ¶¶ 5, 9.) Moreover, although Dr. Egan signed the July 25 Letter, she did not draft it, "was not sure what the purpose of the letter was," and believes that she made a mistake in signing it. (*Id.* ¶ 5.) While the July 25 Letter contains statements that Dr. Egan completed a diagnosis for Doe, she attests she never made such a diagnosis and is not trained to diagnose mental disorders (*Id.* ¶¶ 6–8.) LSAC argues that in light of Doe's alleged fraud, the Court should dismiss Doe's case with prejudice and order his counsel to pay its attorneys' fees and costs associated with the case.

On November 27, 2017, Attorney Salem submitted a declaration of his own in opposition to LSAC's motion, stating under penalty of perjury that Dr. Egan drafted the July 25 Letter based on a prior draft of his and that she placed it on her own professional letterhead. (Attorney Maurice Salem Decl. in Opp'n to Def.'s Sanctions Mot. ("Salem Decl.") ¶¶ 7–9, Dkt. No. 41.) Attorney Salem also asserts that he drafted the September 5 Letter, that he read it to Dr. Egan over the phone, and that she approved it and gave him permission to attach her typed signature. (*Id.* ¶ 18.)

On March 19, 2018, Doe filed a cross-motion pursuant to Rule 11 asking this Court to sanction LSAC and Attorney Burgoyne. (Pl.'s Mot. for Sanctions Against Def. LSAC and its Att'y Robert Burgoyne ("Pl.'s Sanctions Mot."), Dkt. No. 68.) Doe contends that Attorney Burgoyne blackmailed Dr. Egan into signing her declaration and testifying in support of her declaration at her deposition. Doe's motion includes a declaration by Attorney Salem. (*See* Pl.'s Sanctions Mot., Ex. 1, Decl. of Attorney Maurice Salem in Supp. of Pl.'s Sanctions Mot. ("Salem

Decl. II"), Dkt. No. 68-1.) Attorney Salem asserts that on November 21, 2017, he received a call

from Dr. Robin Snead, the family friend who referred him and John Doe to Dr. Egan. (*Id.* ¶ 20.)

According to Attorney Salem, Dr. Snead explained that Dr. Egan had just been on a phone call

with Attorney Burgoyne and that she seemed "very worried and afraid," which had "something to

do with her not being licensed in Illinois." (*Id.*) Doe argues that Dr. Egan retracted her earlier

letters because Attorney Burgoyne told her that if she did not do so, he would reveal that she was

not a licensed psychologist. (Mem. of Law in Supp. of Pl.'s Sanctions Mot. ("Pl.'s Sanctions

Mem."), Dkt. No. 69.) Doe requests that the Court sanction LSAC by allowing him to take the

LSAT with unlimited time, pay all his attorneys' fees and costs, and pay a $10 million fine.[3] (Pl.'s

Sanctions. Mem. at 7.)

### EVIDENTIARY RECORD

In April 2018, this Court scheduled an evidentiary hearing on the parties' cross-motions

for sanctions. (Dkt. No. 75.) Dr. Egan, Dr. Snead, Attorney Burgoyne, John Doe, and Attorney

Salem testified at the hearings, which took place on July 17, 2018, and August 6, 2018. The

follows summarized the evidence adduced at those hearings as well as the paper record.

According to Attorney Salem, Dr. Snead recommended that he and John Doe meet with

Dr. Egan regarding a letter for accommodations because Dr. Egan was a psychologist with

extensive experience working with learning disabilities. (Attorney Maurice Salem Test., Aug. 6,

2018 Hr'g ("Salem Test."), 257:1–5, Dkt. No. 137.) Dr. Egan is an independent contractor who

works in Dr. Snead's office. (Dr. Diane L. Egan Test., July 17, 2018 Hr'g ("Egan Test."), 31:21–

32:3, Dkt. No. 136.) On July 28, 2017, Dr. Snead sent a text message to Attorney Salem to let him

know that Dr. Egan wanted him to bring a proposed letter to their appointment for her to sign.

---

[3] Doe's memorandum requests that LSAC pay $100 million in damages for its alleged violation. (Pl.'s
Sanctions Mem. at 7.) At the evidentiary hearing on July 17, 2018, Doe orally amended the request to $10
million. (Tr. of July 17, 2018 Evidentiary Hr'g at 191:25–192:16, Dkt. No. 136.)

(Pl.'s List of Confidential and Sealed Exs. for the July 17, 2018 Sanctions Hr'g ("Pl.'s Hr'g Exs."), Ex. D at 12, Dkt. No. 107-2; Dr. Robin Dale Snead Test., July 17, 2018 Hr'g ("Snead Test."), 122:16–24, Dkt. No. 136; Salem Test. 257:6–10.) Dr. Egan denies ever requesting that Attorney Salem bring a proposed letter to the meeting. (Egan Test. 65:9–12.) To Dr. Egan's recollection, Dr. Snead never asked her to do an evaluation of Doe, but she asked if she could meet with "a friend who was having issues with his son about what—he had just graduated from college and what he might continue to do." (*Id.* at 34:20–24, 35:15–19.) Dr. Egan did not charge Doe or Attorney Salem for the appointment. (*Id.* at 35:2–4.)

Sometime in late July 2017, Dr. Egan, Doe, and Attorney Salem had a meeting[4] ("July Meeting"). Attorney Salem brought a proposed draft of the July 25 Letter with him, as well as a copy of John Doe's IEP from high school. (Salem Test. 257:8–10.) The July Meeting lasted somewhere between two and four hours.[5] Attorney Salem was present in the room throughout the meeting. (Egan Test. 35:11–14.) John Doe testified that he and Attorney Salem brought up his diagnosis and LSAT accommodations immediately upon arriving at Dr. Egan's office. (John Doe Test. 216:24–217:1.) Doe recalled that Dr. Egan asked him questions about his relationships with his peers, his family, his accommodations, and also spoke about herself. (*Id.* at 217:22–218:6.) Attorney Salem also asked Dr. Egan several questions during the meeting. (*Id.* at 219:15–18.) Attorney Salem testified that Dr. Egan "asked questions that a psychologist would ask," spoke

---

[4] It is not clear from the record exactly when in July 2017 this meeting took place. Dr. Snead and Attorney Salem's text messages reflect that on July 27, 2017, Dr. Snead told Attorney Salem that he and Doe had an "appointment tomorrow" with Dr. Egan, and on July 28th, Dr. Snead told Attorney Salem to bring a proposed letter to the meeting. (Pl.'s Hr'g Exs., Ex. D at 11–22.) However, the letter Attorney Salem brought to the meeting is dated July 25, 2017. (*Id.* Ex. A at DLE 0010, Dkt. No. 107-1; Salem Test. 266:7–11.) Dr. Egan testified that she believed the meeting took place on July 25th. (Egan Test. 34:11–16.)

[5] Attorney Salem testified that the meeting lasted from 11:00 a.m. until nearly 3:00 p.m. (Salem Test. 257:11–14.) John Doe testified that the meeting lasted close to four hours. (John Doe Test., Aug. 6, 2018 Hr'g ("John Doe Test."), 217:17–18, Dkt. No. 137.) According to Dr. Egan, the meeting could not have lasted longer than two hours and fifteen minutes. (Egan Test. 35:5–10.)

about her own family, and ultimately diagnosed Doe with attention-deficit disorder. (Salem Test. 257:18–23.)

Dr. Egan testified that she did not complete an evaluation of John Doe at the July Meeting. (Egan Test. 38:3–9.) Attorney Salem answered many of the questions Egan directed at Doe. (*Id.* at 40:6–8.) In Dr. Egan's view, she could not possibly have completed a diagnosis of John Doe while Attorney Salem was in the room, particularly when he was so involved in answering her questions. (*Id.* at 87:17–23.) As to Doe's medical records, Dr. Egan received only a copy of his high school IEP, which she considered "null and void," as Doe was a college graduate at that point. (*Id.* at 38:10–14.)

## I.     July 25 Letter

The July 25 Letter is addressed to the LSAC and signed "Dr. Diane L. Egan." (Pl.'s Hr'g Exs., Ex. E at 30–31.) The letter explains that Dr. Egan completed a diagnosis of John Doe, reviewed his full medical record, and determined that he suffered from emotional disturbance and attention-deficit disorder. (*Id.*) After providing an overview of the testing accommodations John Doe received in high school and college, the letter concludes by stating that Doe should be provided a five-day period over which to take the LSAT. (*Id.*)

The parties disagree as to who ultimately authored the July 25 Letter. Attorney Salem testified that he provided Dr. Egan a one-page draft during the July Meeting. (Pl.'s Hr'g Exs., Ex. A at DLE 0010; Salem Test. 266:7–11.) According to Attorney Salem, Dr. Egan then drafted the two-page July 25 Letter, placed it on her professional letterhead, and signed it. (*See* Pl.'s Hr'g Exs., Ex. E at 30–31, Dkt. No. 107-2; Salem Test. 260:3–10, 266:12–16.) The only significant difference between the two documents—apart from the date and letterhead—is that Attorney Salem's draft offers LSAC the use of Dr. Snead and Dr. Egan's office to administer John Doe the

LSAT, while the July 25 Letter does not. (*Compare* Pl.'s Hr'g Exs., Ex. A at DLE 0010, *with id.* Ex. E at 30–31.)

According to Dr. Egan, the write-up that Attorney Salem gave her during the July Meeting was a two-page, not one-page, document. (Egan Test. 56:18–23.) Upon seeing a copy of Attorney Salem's one-page draft during the evidentiary hearing, Egan testified that she recognized parts of the document. (*Id.* at 77:13–78:4.) Dr. Egan remembered that she quickly read and signed a two-page document she received from Attorney Salem at the end of the July Meeting because she needed to return to her work. (*Id.* at 39:14–18.) She felt "very intimidated" by the situation and did not want to disappoint her colleague, Dr. Snead. (*Id.* at 40:1–10.) As Dr. Egan testified: "unfortunately, my mistake was is [*sic*] that I felt I was exhausted, I was in a time crunch, this was pushed at me, and I unfortunately made a terrible mistake and I signed it." (*Id.* at 88:24–89:2.)

Attorney Salem let Dr. Egan keep a copy of his write-up after the July Meeting and asked her to take anything out with which she was uncomfortable. (*Id.* at 56:24–57:1.) Egan recalled removing the language offering LSAC the use of her office to administer the LSAT to Doe over a five-day period. (*Id.* at 56:24–57:8.) But Dr. Egan insisted that some of the language she took out of her version remained in the July 25 Letter that Doe sent to LSAC. (*Id.* at 57:6–8.) Dr. Egan acknowledged that sometime after the July Meeting, she or her husband added her letterhead to her version of the letter. (*Id.* at 75:17–22.) But she was adamant in testifying that she neither drafted nor signed the final July 25 Letter that Doe submitted to LSAC.[6] (*Id.* at 37:16–20, 85:8–14.) Dr. Egan did not recollect how she provided her edits to John Doe and Attorney Salem. (*Id.* at

---

[6] Dr. Egan's testimony at the July 17, 2018 evidentiary hearing that she did not sign the July 25 Letter contradicts her prior declaration. In that declaration, she attests: "Two letters were included with the subpoena. The first was dated July 25, 2017, and has my handwritten signature (the 'July 25 letter'). . . . I did not draft the July 25 letter. . . . I was asked to sign it and I did so." (Def.'s Sanctions Mot., Ex. 1, Egan Decl. ¶¶ 4–5.)

85:22–86:2.) John Doe testified that he picked up the signed July 25 Letter in person at Dr. Egan's office within around a week of the July Meeting. (John Doe Test. 222:1–12.)

## II. September 5 Letter

The September 5 Letter is addressed to LSAC and signed in typewritten text "/s/Dr. Diane Egan." (*See* Def.'s Exs. to Dr. Diane. L. Egan Dep., Mar. 2, 2017 ("Def.'s Exs. to Egan Dep."), Ex. H at 35–36, Dkt. No. 95.) The letter purports to respond to LSAC's decision denying John Doe's requested accommodations and provide "objective-based evidence" explaining why Doe is entitled to take the LSAT over five full days:

> I am an impartial and independent doctor. I have conducted a full and complete evaluation that I believe is required to determine [Doe's] disability and the accommodations that he would require. I also reviewed [Doe's] history to find any professional or doctor whose evaluation or recommended accommodations differs from what is being requested. None exist. The result of my evaluation constitutes objective evidence of [Doe's] disability because it is based on [Doe's] historical medical records and his reactions and responses to my evaluations.

(*Id.* at 35.) The September 5 Letter also provides a detailed explanation of how the testing facility and conditions at the Doe's last LSAT prevented him from performing effectively on the exam. (*Id.* at 36.) The letter adds that Doe's "medical doctor, Dr. Snead, also has the staff and facility to provide such accommodations, if requested." (*Id.*)

Attorney Salem and Dr. Egan's recollections of the events that led Attorney Salem to submit the September 5 Letter to the LSAC vary significantly. Accordingly, the Court discusses Attorney Salem and Dr. Egan's accounts separately below.[7]

### A. Attorney Salem's Recollection of Events

Attorney Salem testified that he emailed Dr. Egan on August 31, 2017 to inform her that the LSAC had rejected John Doe's proposed accommodations for the September 2017 LSAT.

---

[7] The Court does not discuss John Doe's testimony regarding the September 5 Letter because he testified that he did not know who prepared the letter. (John Doe Test. 215:5–7.)

(Pl.'s Hr'g Exs., Ex. A at DLE 0011; Salem Test. 266:17–21.) Based on his phone records, Attorney Salem claimed that he knows he spoke to Egan about revising the July 25 Letter for purposes of John Doe's appeal at least once over the phone, on September 1, 2017, for around two minutes. (Salem Test. 260:13–261:9, 298:3–15.) During that call or another call on or around that day, Dr. Egan dictated the two-page single-space September 5 Letter to Attorney Salem over the phone, as she was on vacation without internet at the time. (*Id.* at 294:1–17.) Attorney Salem then typed up the September 5 Letter based on their conversation. (*Id.*)

On September 3, 2017, Attorney Salem sent Dr. Egan the proposed draft via email, but never received a response. (Pl.'s Hr'g Exs., Ex. A at DLE 0020; Salem Test. 300:7–13, 301:2–4.) On September 4, 2017, Attorney Salem emailed Dr. Egan again, asking for confirmation that she had received the letter, as it was due September 5. (Pl.'s Hr'g Exs., Ex. A. at DLE 0020; Salem Test. 301:8–15.) Attorney Salem also sent Dr. Egan a text message on September 4 about the deadline, which she did not answer. (Def.'s Exs. to Egan Dep., Ex. F, Dkt. No. 93; Salem Test. 303:2–9.) On September 5, Attorney Salem texted Dr. Snead in the hopes that she would be able to get in touch with Dr. Egan. (Pl.'s Hr'g Exs., Ex. D at 13; Salem Test. 303:16–304:7.) Though Attorney Salem was not able to get in touch with Dr. Egan prior to LSAC's deadline, he typed her name under the sign-off following a "/s/" symbol to represent a digital signature. (*See* Def.'s Exs. to Egan Dep., Ex. H at 35–36.) Attorney Salem said that he submitted the September 5 Letter without Egan's final approval "based on my conversation with her on the phone and based on what she said to me, particularly when she said make sure you get it in on time on the phone call conference I had with her." (Salem Test. 311:5–9.) Around 11:00 p.m. on September 5, Dr. Snead texted Attorney Salem to let him know she had been unable to reach Dr. Egan that day. (Pl.'s Hr'g Exs., Ex. D at 13–14; Salem Test. 305:3–9.) Attorney Salem replied, "It's okay. I just wrote her

position from her first report and submitted it. I emailed a revision to her. Thank you Robin."
(Pl.'s Hr'g Exs., Ex. D at 14; Salem Test. 305:10–18.)

Attorney Salem testified that Dr. Egan approved the September 5 Letter after she came back from vacation. (Salem Test. 306:5–10.) In support of that claim, Attorney Salem explained that Dr. Egan never rejected his changes, and that sometime after September 5th, Dr. Snead confirmed that Dr. Egan had received the letter and thought it was fine.[8] (Id. at 306:10–21, 309:6–8.) Attorney Salem never personally informed Egan that he submitted the September 5 Letter to LSAC with her signature attached. (Id. at 308:20–309:5.)

### B.      Dr. Egan's Recollection of Events

According to Dr. Egan, after the July Meeting, she never saw or heard from Attorney Salem again until the present lawsuit began. (Egan Test. 74:23–75:2.) Dr. Egan denies that she ever spoke to Attorney Salem over the phone on or around September 1, 2017. (Id. at 75:9–16.) Additionally, she never opened or read any of Attorney Salem's emails. (Id. at 63:3–5, 93:4–11.)

Dr. Egan told the Court that she and her husband left for a vacation on September 1, 2017 and returned on September 8th. (Id. at 50:6–10.) While she did not have email access during her vacation, (id. at 50:16–19), Dr. Egan learned from her husband that Attorney Salem was attempting to get in touch with her (id. at 59:6–14). Because Dr. Snead was supposed to join their vacation, Dr. Egan's husband had called Dr. Snead to inform her that they had no electricity on their trip. (Id. at 59:6–9.) During that call, Dr. Snead relayed to Dr. Egan's husband that Attorney Salem "had been calling every 15 minutes trying to find out how" to get in touch with Dr. Egan. (Id. at 59:10–12.)

---

[8] When asked whether she recalled speaking with Dr. Egan and her husband about the September 5 Letter after they returned from their trip, Dr. Snead testified only that she told them that Attorney Salem was "looking for them about a letter." (Snead Test. 131:9–12.)

Dr. Egan testified that she had no intention of signing the September 5 Letter, which was why even after her vacation ended, she did not look at or answer any of Attorney Salem's emails. (*Id.* at 59:21–24, 93:4–11.) She first saw the September 5 Letter during her deposition. (*Id.* at 40:20–41:14.) According to Dr. Egan, she never discussed the contents of the September 5 Letter with Attorney Salem and never authorized him or John Doe to submit it to LSAC with her signature. (*Id.* at 41:19–25, 42:7–19.)

### III.    Dr. Egan's Declaration of November 21, 2017

On November 21, 2017, Dr. Egan and LSAC Attorney Burgoyne had a phone conversation regarding the letters Doe submitted to LSAC under Dr. Egan's name. (Egan Test. 42:20–22; Attorney Robert A. Burgoyne Test., July 17, 2018 Hr'g ("Burgoyne Test."), 168:4–17, Dkt. No. 136.) As a result of that phone call, Dr. Egan signed a declaration retracting the July 25 and September 5 Letters. (Def.'s Sanctions Mot., Ex. 1, Egan Decl.) Dr. Egan attests that though she signed the July 25 Letter, she did not draft it, regretted signing it, and has since realized that it contains certain false statements. (*Id.* ¶¶ 5–7.) Specifically, Dr. Egan denies having diagnosed John Doe and states that she does not have the training to diagnose mental impairments such as attention-deficit disorder. (*Id.* ¶¶ 7–8.) According to her declaration, Dr. Egan did not write, sign, or authorize anyone to sign the September 5 Letter on her behalf. (*Id.* ¶ 9.)

Doe argues that Dr. Egan signed her declaration retracting the July 25 and September 5 Letters solely because Attorney Burgoyne threatened her on their November 21 call:

> It is obvious to any reasonable person that only after the first call from LSAC's attorney, Mr. Burgoyne, did Dr. Egan become very worried and frighten [*sic*]. So much so that she consulted with an attorney for help; she gave Dr. Snead the impression that she was very worried and frightened. However, the most telling act of Dr. Egan's fear is the signing a [*sic*] false declaration that clearly contradicts her life's education, experience and evaluation of Plaintiff's disability. The only possible thing that could have caused such fear is the fact that Dr. Egan was licensed in Ohio and not in Illinois.

(Pl.'s Sanctions Mem. at 5.) Dr. Egan, Attorney Burgoyne, Dr. Snead, and Attorney Salem all testified as to that phone call on November 21, 2017, and Dr. Egan's emotional state during and after the call. Because Dr. Egan, Attorney Burgoyne, and Dr. Snead testified as to their first-hand knowledge of the call and its effect on Dr. Egan, the Court finds their testimony relevant and recounts their recollections below. However, Attorney Salem did not testify as to any personal knowledge of the call or its effect on Dr. Egan. Accordingly, the Court does not find Attorney Salem's testimony relevant and does not recount it.

### A. Dr. Egan's Recollection of Events

Dr. Egan called Attorney Burgoyne shortly after she received a subpoena from LSAC related to the present case. (Egan Test. 42:20–22.) According to Dr. Egan, when Attorney Burgoyne returned her call on November 21, 2017, they had "a very light conversation," during which Attorney Burgoyne asked about her involvement drafting the letters LSAC had received regarding John Doe's accommodations. (*Id.* at 43:1–5, 84:25–85:5.) Dr. Egan was surprised to hear on the call that Salem had submitted a declaration to the Court stating that he had been preparing her as an expert witness in the present case, as he had never communicated that to her. (Salem Decl. ¶ 11; Egan Test. 43:14–17.) Attorney Burgoyne also explained the legal aspects of the case to her, which Egan found "very, very comforting." (Egan Test. 43:17–19.) Dr. Egan denies that Attorney Burgoyne ever threatened her or demanded that she retract the letters submitted under her name. (*Id.* at 43:20–25.) Moreover, Dr. Egan said the question of her license never came up during her call with Attorney Burgoyne. (*Id.* at 104:24–105:8.) After their phone call, Dr. Egan felt angry because she found it "unbelievable" that Attorney Salem signed her name to a letter without her permission and submitted it to LSAC. (*Id.* at 105:8–10.) After speaking to Attorney Burgoyne, Dr. Egan felt she needed legal representation. (*Id.* at 104:9–11.)

Shortly after their call, Attorney Burgoyne sent Dr. Egan a draft declaration over email, with a note requesting that she review it and let him know of any changes she wanted to make. (Def.'s Exs. to Egan Dep., Ex. H at 16–17; Egan Test. 44:6–19.) Dr. Egan testified that she agreed with the declaration, except that she made one edit to her age. (Egan Test. 46:1–19.) She made the decision to sign the declaration because she felt it was her "civic duty" to respond to the facts presented on both sides of the case. (*Id.* at 108:16–22.)

### B. Attorney Burgoyne's Recollection of Events

Attorney Burgoyne testified that on November 21, 2017, he returned a call from Dr. Egan and explained to her that he "was trying to sort out how those two letters came to be prepared." (Burgoyne Test. 168:4–17.) On that call, Dr. Egan told Attorney Burgoyne that she did not believe the contents of the July 25 Letter were accurate and that she had never seen the September 5 Letter. (*Id.* at 168:18–24.) Attorney Burgoyne denies that he threatened or blackmailed Dr. Egan in any way, or that the issue of her license ever came up on their November 21 call. (*Id.* at 169:2–15.) Attorney Burgoyne testified that he had no independent knowledge of Dr. Egan's licensure status. (*Id.* at 174:17–20.) To Attorney Burgoyne's recollection, his demeanor on the call was "cordial and polite." (*Id.* at 169:13–15.)

Within a few hours of the November 21 call, Attorney Burgoyne sent Dr. Egan a draft declaration based on their conversation and asked that she call him if she felt uncomfortable with any of the statements included. (Def.'s Exs. to Egan Dep., Ex. H at 16–17; Burgoyne Test. 169:18–170:15.) Attorney Burgoyne testified that Dr. Egan's only change to his draft was to her age. (Burgoyne Test. 171:14–16.)

### C.     Dr. Snead's Recollection of Events

John Doe supports his motion for sanctions with a declaration from Attorney Salem attesting that "[a]fter the first telephone call that Dr. Egan had with Burgoyne, November 21, 2017, Dr. Snead called me stating that Dr. Egan is very worried and afraid. Dr. Snead said it had something to do with her not being licensed in Illinois." (Pl.'s Sanctions Mot., Ex. 1, Salem Decl. II ¶ 20.) At the evidentiary hearing on July 17, 2018, Dr. Snead did not testify as to Dr. Egan's behavior after the November 21 call, but she did note that Dr. Egan seemed upset after receiving her October 31st subpoena for all materials relevant to the present case. (Snead Test. 125:19–126:12). Dr. Snead did not offer an opinion as to why Dr. Egan was upset. Dr. Snead said that at some point later, she learned from Attorney Salem that Dr. Egan was not licensed to practice psychology in Illinois. (*Id.* at 126:13–21.)

Though Dr. Snead did not testify at the evidentiary hearing about Dr. Egan's behavior after the November 21 call, she discussed it at her deposition on March 20, 2018. Dr. Snead said that Dr. Egan "was just very upset about being involved after the conversation." (Dr. Robin Snead Dep., Mar. 20, 2018 ("Snead Dep.") 61:23–62:8, Dkt. No. 98.) Dr. Egan expressed anger towards Attorney Salem and even towards Dr. Snead for getting her involved with him. (*Id.* at 62:20–24.) When asked directly whether Dr. Egan was angry with LSAC or its counsel, Dr. Snead responded that Dr. Egan "was upset about the whole thing." (*Id.* at 63:1–4.) Dr. Egan did not say anything to Dr. Snead about being threatened or bring up the issue of her license after she got off the phone with Attorney Burgoyne on November 21. (*Id.* at 61:8–22, 63:12–17.)

### DISCUSSION

To impose any sanction under the Federal Rules of Civil Procedure or in the exercise of the Court's inherent authority—including dismissal with prejudice—the Court must find by at

least a preponderance of the evidence that a party or attorney engaged in sanctionable conduct. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776–82 (7th Cir. 2016).

Whenever an attorney presents a pleading or motion to the Court, that attorney certifies pursuant to Federal Rule of Civil Procedure 11(b) that the document is not being presented for any improper purpose, such as harassing a party or causing unnecessary delay, and that its factual contents have sufficient evidentiary support. Fed. R. Civ. P. 11(b)(1), (3). If the Court determines that an attorney has violated Rule 11(b), it may impose an appropriate sanction. Fed. R. Civ. P. 11(c)(1). Such sanctions should be limited to "what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). A Rule 11 sanction may include nonmonetary directives, penalties, or, if warranted, a requirement to pay all reasonable attorneys' fees resulting from the violation. *Id.* "In general, the district court enjoys broad discretion in setting a sanction award that it believes will serve the deterrent purpose of Rule 11." *Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003). When ordering the payment of attorneys' fees under Rule 11, the Court "has an obligation to award only those fees which directly resulted from the sanctionable conduct." *Id.* District courts also have inherent power outside of the Rules to sanction parties for abusing the judicial system or acting in bad faith in the course of litigation. *Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 927 (7th Cir. 2004) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)).

Here, as a sanction for Attorney Salem's alleged submission of false documentation to the Court, LSAC has requested that the Court order Salem to reimburse all its attorneys' fees and dismiss Doe's case with prejudice. "[D]ismissal is a harsh sanction." *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 657 (7th Cir. 2003). But the Seventh Circuit has recognized that dismissal may be appropriate where the underlying conduct is so "egregious" and "deceptive that

the filing of [the] baseless claim amount[s] to a veritable attack on our system of justice." *Id.*
(affirming the district court's dismissal of the plaintiff's discrimination case based on its finding
that the plaintiff falsified the underlying documents that gave rise to her claims). "Although
dismissal with prejudice is a permissible judicial sanction for fraud on the court, the general rule is
that before dismissing a suit with prejudice as a sanction for misconduct a court should consider
the adequacy of a less severe sanction . . . ." *Oliver v. Gramley*, 200 F.3d 465, 466 (7th Cir. 1999)
(internal citations omitted) (but holding, nevertheless, that the district court was not required to
consider a lesser sanction than dismissal where "the plaintiff's fraud is criminal in character and
would if undetected destroy a legitimate and dispositive defense").

## I.  LSAC's Motion for Sanctions Against Doe and Salem

Having considered the full record, including the evidence adduced at the evidentiary
hearing, the Court finds by a preponderance of the evidence that Attorney Salem engaged in
sanctionable conduct with respect to the September 5 Letter but makes no such finding as to the
July 25 Letter. In reaching this conclusion, the Court does not mean to endorse the questionable
conduct by Attorney Salem with respect to the July 25 Letter.

Specifically, as to the July 25 Letter, the record shows that Attorney Salem submitted to
LSAC, and subsequently to the Court, the same letter that Dr. Egan reviewed, edited, and signed.
While Dr. Egan testified at the hearing on July 17, 2018 that she did not sign the July 25 Letter
that Attorney Salem ultimately provided to LSAC, her prior declaration contradicts that
testimony. (*Compare* Egan Test. 37:16–20, *with* Def.'s Sanctions Mot., Ex. 1, Egan Decl. ¶¶ 4–5.)
Additionally, Dr. Egan testified that she or her husband placed the July 25 Letter on her
professional letterhead and that she removed language offering LSAC the use of Dr. Snead's
office as a testing facility for Doe. (Egan Test. 56:24–57:8, 75:17–22.) That change is reflected in

16

the final July 25 Letter. (Pl.'s Hr'g Exs., Ex. E at 30–31.) The Court does not find it credible that Dr. Egan would provide her letterhead, request edits, and then refuse to sign the July 25 Letter.

Dr. Egan testified that she signed a draft of the letter she read only briefly at the end of the July Meeting because she felt intimidated by Attorney Salem and his relationship with Dr. Snead. (Egan Test. 40:1–10.) Dr. Egan may well have felt pressured to do a favor for a close friend of her colleague, but there is nothing to indicate that Doe or Attorney Salem actually threatened her or used any force to obtain her signature. Additionally, Dr. Egan signed a draft of the July 25 Letter at the July Meeting. The record indicates that sometime later, outside the presence of Doe and Attorney Salem, Dr. Egan fully reviewed that draft, made changes, placed it on her letterhead, and signed the July 25 Letter that Attorney Salem ultimately provided to LSAC.

While Attorney Salem might not have engaged in sanctionable conduct as to the July 25 Letter, his behavior still raises ethical questions. He attested to the Court that he wrote the initial draft of the July 25 Letter (Salem Decl. ¶¶ 7–9), which contained several dubious statements he should have understood were false. First, the draft stated that Dr. Egan had reviewed Doe's full medical record, when in fact Doe brought only his high school IEP to the July Meeting. Second, the draft asserted that Dr. Egan conducted a psychological diagnosis of Doe. The testimony of Doe, Attorney Salem, and Dr. Egan concerning the July Meeting undermine that statement, as those witnesses all agree that Attorney Salem never left the room while Dr. Egan and Doe were speaking. The Court is skeptical that even a person outside the field of psychology could expect a professional to diagnose an adult based on a nonconfidential conversation with another person, namely, Attorney Salem, present. Despite these issues, however, it appears that Attorney Salem had a good-faith basis for his belief that Dr. Egan was a psychologist. Therefore, his reliance upon the July 25 Letter, once Dr. Egan had signed off on it, does not constitute sanctionable conduct.

17

Moreover, while Dr. Egan later expressed genuine regret that she was not more scrupulous in reviewing and signing the letter, the record does not suggest that she ever fully expressed her hesitations to Attorney Salem. Accordingly, the Court does not find by a preponderance of the evidence that Attorney Salem violated Rule 11 by filing the July 25 Letter with this Court.

As to the September 5 Letter, however, the preponderance of the evidence shows that the document was not genuine and that Attorney Salem violated Rule 11 by submitting it to this Court in support of Doe's preliminary injunction motion. Still worse, Attorney Salem then filed a declaration with this Court certifying the authenticity of the September 5 Letter. (Salem Decl. ¶ 18.) Attorney Salem attested that he drafted the letter, read it to Dr. Egan over the phone days before the September 5 deadline, and obtained her approval to submit it with her typed signature. (*Id.*) But Attorney Salem's testimony at the August 6, 2018 hearing belies that assertion. He testified that Dr. Egan dictated the September 5 Letter over the phone. (Salem Test. 294:1–17.) Additionally, he admitted that he never had Dr. Egan's final approval to submit the Letter to LSAC but insisted that she had told him previously that he should "make sure" he got it in by the deadline at all costs. (*Id.* at 311:5–9.)

It would have been unethical for Attorney Salem to submit the September 5 Letter to LSAC or to this Court even under the circumstances that Attorney Salem describes. But Attorney Salem's testimony as to that letter is simply not credible. His text messages with Dr. Snead show that late on September 5, 2017, he messaged Dr. Snead letting her know that he "just wrote her position from her first report and submitted it." (Pl.'s Hr'g Exs., Ex. D at 14.) If Attorney Salem had any conversations with Dr. Egan regarding the September 5 Letter, he surely would have referred to those conversations in his text message, rather than to her "first report." Moreover, Dr. Egan's nonresponse to Attorney Salem's text message and numerous emails show that she was not

cooperating with his appeal to LSAC. Dr. Egan did not have phone service or email access around September 5, as she was on vacation in a remote place. But there are no records showing that she attempted to contact Attorney Salem even after she returned. If Dr. Egan had been involved in drafting the September 5 Letter and adamant that Attorney Salem submit it on time, the Court would expect her to have replied to his messages at some later date to explain her delayed response or inquire as to whether Attorney Salem was able to submit the letter. The correspondence between Attorney Salem and Dr. Egan is more consistent with Dr. Egan's vehement denial that she ever spoke to him regarding the September 5 Letter. Finally, the September 5 Letter contains the same language offering Dr. Snead's office as an alternate testing center for Doe that Dr. Egan had previously removed from the July 25 Letter. (Def.'s Exs. to Egan Dep., Ex. H at 36.) The presence of this language, which Dr. Egan previously found objectionable, further indicates that she was not involved in drafting the September 5 Letter.

Because the Court finds that Attorney Salem added Dr. Egan's typed signature to the September 5 Letter without her permission and submitted it to LSAC and the Court, the Court finds that Attorney Salem engaged in sanctionable conduct. To determine the appropriate relief for LSAC as a result of this misconduct, the Court next considers the merits of Doe's cross-motion for sanctions against LSAC and its counsel.

## II.    Doe's Motion for Sanctions Against LSAC and Attorney Burgoyne

The Court finds no merit in Doe's Rule 11(c) motion for sanctions against LSAC and Attorney Burgoyne. As an initial matter, the Court notes that Doe filed his cross-motion four months after LSAC's own sanctions motion and seventeen days after Dr. Egan's deposition testimony disavowing the July 25 and September 5 Letters. This timing suggests that the primary purpose of Doe's motion was to retaliate against LSAC and its counsel. Then, several months

after Dr. Egan testified at this Court's July 17, 2018 sanctions hearing, Attorney Salem filed a separate defamation lawsuit against her regarding statements she made under oath. (*See* Compl., *Salem v. Egan*, No. 18-cv-07708 (N.D. Ill. Nov. 19, 2018), Dkt. No. 1.)[9] Even before reaching the evidentiary record as to Doe's motion for sanctions, his counsel's pattern of retributive conduct against LSAC, Attorney Burgoyne, and Dr. Egan calls into question the motion's underlying merits.

Moreover, while Doe asserts that Attorney Burgoyne blackmailed Dr. Egan into signing a "false declaration," (Pl.'s Sanctions Mot.), the Court finds that everything included in Dr. Egan's declaration appears to be true and is supported by her subsequent testimony. Dr. Egan's declaration asserts, most pertinently, that she made a few changes to and signed the July 25 Letter, though she realized in hindsight that it was a mistake; that she never completed a diagnosis of Doe; and that she never approved the September 5 Letter. (Def.'s Sanctions Mot., Ex. 1, Egan Decl. ¶¶ 5–7, 9.) As discussed above, Dr. Egan's testimony at the evidentiary hearing persuaded the Court that she deeply regretted her involvement in the July 25 Letter; that she could not have properly evaluated Doe at the July Meeting with Attorney Salem present the entire time; and that she never wrote or signed off on the September 5 Letter. Accordingly, Attorney Burgoyne did not violate Rule 11(b) by drafting and submitting Dr. Egan's declaration to this Court.

Putting aside the Rule 11(b) issues Doe raises, the Court would find it sanctionable for an attorney to use threats or blackmail to convince a witness to sign a declaration, even if the document contained only truthful statements. But there is no evidence suggesting that Attorney Burgoyne obtained Dr. Egan's declaration using threats or blackmail. The only proffered grounds for Doe's sanctions motion was a declaration by Attorney Salem, attesting that Dr. Snead told him

---

[9] Attorney Salem's case has since been dismissed for lack of subject-matter jurisdiction. (*See* Order, *Salem v. Egan*, No. 18-cv-07708 (July 30, 2019), Dkt. No. 32.)

Dr. Egan became very upset after a phone call with Attorney Burgoyne, "something to do with her not being licensed in Illinois." (Pl.'s Sanctions Mot., Ex. 1, Salem Decl. II ¶ 20.) Attorney Salem's declaration is inconsistent with Dr. Snead's testimony at the evidentiary hearing that she first heard Dr. Egan did not have a license to practice psychology in Illinois from Attorney Salem himself. (Snead Test. 126:13–21.) Additionally, Dr. Snead's deposition testimony plainly contradicts Attorney Salem's declaration and Doe's sanctions motion. Dr. Snead explained that after Dr. Egan's phone call with Attorney Burgoyne on November 21, 2017, Dr. Egan expressed anger toward Attorney Salem for submitting the September 5 Letter under her name without her consent, not toward LSAC or its counsel. (Snead Dep. 62:20–63:5.) Both Dr. Egan and Attorney Burgoyne recall their phone conversation as pleasant and professional, and both deny that the subject of Dr. Egan's license ever came up.[10] Dr. Egan and Attorney Burgoyne's subsequent email correspondences are friendly in tone, reinforcing their testimonies that their call was entirely civil.[11]

Based on the absence of any credible evidence that LSAC's counsel engaged in sanctionable conduct, Doe's cross-motion for sanctions is denied.

### III. Imposition of Sanctions Against Attorney Salem

LSAC requests that this Court dismiss Doe's lawsuit with prejudice and require Attorney Salem to reimburse LSAC for all its legal fees associated with the case. There is no doubt that Attorney Salem's misconduct here was deeply concerning. Accordingly, pursuant to this Court's

---

[10] The Court notes that even if Attorney Burgoyne had upset Dr. Egan by asking about her credentials, he would not have engaged in sanctionable behavior. Doe had described Dr. Egan as his expert witness. Pursuant to Federal Rule of Evidence 702, Dr. Egan's training and education as an expert witness would have been a relevant and appropriate topic for Attorney Burgoyne to bring up on their call.

[11] Dr. Egan emailed Attorney Burgoyne her signed declaration on Thanksgiving Day, November 23, 2017, along with a note thanking him for his assistance and wishing him a happy holiday. (Def.'s Exs. to Egan Dep., Ex. H at 20.) Attorney Burgoyne replied the following day, "Received! Have been off my email today or would have responded sooner. Thanks again Diane." (*Id.*)

inherent authority and Rule 11(c)(2), Attorney Salem is hereby ordered to reimburse LSAC for its reasonable attorneys' fees and costs that resulted from: (1) defending against Doe's preliminary injunction motion (the memorandum in support of which included the September 5 Letter as an exhibit), (2) bringing its motion for sanctions, and (3) defending against Doe's cross-motion for sanctions. Finally, the Court prohibits Doe from making any further reference to the September 5 Letter in any future submissions in this case. For the purposes of any future rulings regarding the merits of Doe's underlying cause of action, the Court strikes the September 5 Letter from the record.

The Court declines to dismiss Doe's case with prejudice. Rule 11(c)(4) requires the Court to consider what is the least serious sanction that is still effective at deterring future misconduct. Given the extensive litigation that occurred since Attorney Salem first filed the September 5 Letter with this Court, his monetary penalty is likely to be significant. In the Court's view, that penalty should be sufficient to discourage Attorney Salem and other attorneys from engaging in such behavior in the future.

## CONCLUSION

The Court grants in part and denies in part LSAC's motion for sanctions against Doe and Attorney Salem. (Dkt. No. 38.) The Court denies Doe's cross-motion for sanctions against LSAC and Attorney Burgoyne. (Dkt. No. 68.) Doe's counsel Attorney Salem is hereby ordered to pay LSAC's reasonable litigation expenses and costs in connection with the preliminary injunction motion (Dkt. No. 20) and the cross-motions for sanctions.

ENTERED:

Dated: March 31, 2021

_____
Andrea R. Wood
United States District Judge