IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17-cv-06656 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| LAW SCHOOL ADMISSION COUNCIL, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John Doe initiated this lawsuit against Defendant Law School Admission Council, Inc. ("LSAC") in 2017, alleging that LSAC violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12189, by failing to grant him his requested accommodations for the Law School Admission Test ("LSAT"). Doe seeks injunctive relief requiring LSAC to grant Doe's requested disability accommodation and barring LSAC from flagging the scores of examinees who receive accommodations, as well as compensatory damages in the amount of fifty million dollars. Before the Court is LSAC's motion for summary judgment (Dkt. No. 190), in which it argues both that the case should be dismissed for lack of subject-matter jurisdiction and that summary judgment should be granted in its favor on the merits. For the reasons stated below, LSAC's motion is granted.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed.[1]

LSAC is a non-profit organization that administers the LSAT, a standardized examination upon whose scores law schools rely in evaluating applications to their programs. (Def.'s Statement of Material Facts ("DSMF") ¶ 2, Dkt. No. 193; Pl.'s Resp. Statement of Material Facts ("PRSMF") ¶ 2, Dkt. No. 196.) At the relevant time, the LSAT consisted of five multiple-choice sections followed by a writing sample, and examinees were granted 35 minutes to complete each section. (*Id.*) Under standard testing conditions, examinees completed all testing within a single day in a room with other examinees, with the same time and breaks given to all examinees. (*Id.*; DSMF, Ex. 1, Decl. of Michelle Goldberg ("Goldberg Decl.") ¶¶ 5–6, Dkt. No. 193-1.) Examinees could, however, request testing accommodations based on a disability. (DSMF. ¶ 2; PRSMF ¶ 2.)

Between 2016 and 2017, Doe, then an aspiring lawyer, repeatedly applied for (and received) testing accommodations for the LSAT. Doe first registered for the December 2016 LSAT, submitting a timely request for an accommodation of more than 100% additional testing time. (DSMF ¶ 17; PRSMF ¶ 17.) To support the request, Doe submitted several documents. First, he included excerpts from the Individualized Education Plan ("IEP") he received during high school. (DSMF ¶ 18; PRSMF ¶ 18.) The IEP states that Doe was entitled to receive "extended Time – Extending testing time beyond that allowed for regular test administration, PSAE –

---

[1] LSAC briefly argues that Doe's response to its Local Rule 56.1 statement is deficient—specifically, that Doe either does not really deny the fact or fails to offer admissible evidence to show that there is a genuine dispute for trial. LSAC urges the Court simply to grant its motion on this basis or, in the alternative, find that the issues are undisputed as a penalty for the failure to comply with Local Rule 56.1. The Court declines to impose such a drastic sanction. It is enough to note that the Court, in determining whether a fact is undisputed for purposes of this motion, considered the relevance and content of the supporting documentation provided for each party's claims.

Timing Scheduling – Testing over multiple days" for state assessments. (DSMF, Ex. 1, Goldberg Decl., Ex. A, Doe Request for Accommodation-IEP at 0088, Dkt. No. 193-2.) Additionally, in a section designating supplementary aids and services Doe was entitled to receive, the IEP indicates that Doe should be given "Extended time to complete tests – Time and a half over multiple days as needed." (*Id.* at LSAC 0090.) Second, Doe attached a "Social Developmental History" form completed while he was in middle school (and which the Court notes appears to be a behavioral assessment that contains no recommendations relating to academic accommodations). (DSMF, Ex. 1, Goldberg Decl., Ex. A, Doe Request for Accommodation-Developmental History Form at LSAC 0108, Dkt. No. 193-2.) Third, Doe provided documentation showing that he was authorized for "Testing-Extended Test Time: 1.5x" at DePaul University, his undergraduate institution. (DSMF, Ex. 1, Goldberg Decl., Ex. A, Doe Request for Accommodation-DePaul Student Accommodations Report at LSAC 0111, Dkt. No. 193-2.). Finally, Doe presented a form completed by Jodi M. Falk, Ph.D., the Assistant Director for the DePaul University Center for Students with Disabilities, that recommends that Doe be granted 50% additional time on both the multiple choice and writing sections of the LSAT and the use of a reader. (DSMF, Ex. 1, Goldberg Decl., Ex. A, Doe Request for Accommodation Falk Report at LSAC 0112–13, Dkt. No. 193-2.) On the form, Dr. Falk had the option to suggest Doe receive 100% additional time on the LSAT—she instead checked the box for 50% additional time. (*Id.*) Ultimately, LSAC granted Doe 50% additional testing time, as well as 20-minute breaks between sections. (DSMF ¶ 19; PRSMF ¶ 19.) Doe took the December 2016 LSAT with those accommodations. (*Id.* ¶ 20.)

Later, in June 2017, Doe sought to re-take the LSAT—this time, he requested 200% extra testing time, an extra 25 minutes of rest time after the third section, and an extra 15 minutes of break time between the remaining sections. (DSMF ¶ 21; PRSMF ¶ 21.) To support this new

3

request, he submitted additional documentation. First, he included an unsigned Qualified Professional/Evidence of Disability form dated February 24, 2017 from Dr. Robin Snead, along with a signed letter from Dr. Snead ("Initial Snead Letter"). (DSMF ¶ 22; PRSMF ¶ 22.) Doe also submitted a second letter from Dr. Snead, dated April 4, 2017 ("Second Snead Letter"). (*Id.*) In the Evidence of Disability Form, Dr. Snead identifies Doe as suffering from an "Emotional Disturbance" and, in her letters, she notes that Doe received "at least" or "more than" 100% additional time on exams in high school.[2] (DSMF ¶¶ 23–25; PRSMF ¶¶ 23–25.) On that basis, Dr. Snead recommends in the Initial Snead Letter that Doe be granted "at least 100%" additional time on the LSAT. (DSMF ¶ 24; PRSMF ¶ 24.) In the Second Snead Letter, she increases this recommendation to "at least 200%" additional time on the exam.[3] (DSMF ¶ 25; PRSMF ¶ 25.)

LSAC reviewed this request, going over both the documents provided by Doe as well as written recommendations from two outside consultants.[4] (DSMF ¶ 37.) To reach their

---

[2] Doe's IEP actually indicates that he should receive "time and a half" to complete exams, not 100% additional time. Additionally, Dr. Snead wrote that Doe received unlimited time to take the ACT exam, a standardized test used in college admissions. In actuality, however, Doe was only authorized by the ACT to receive up to time-and-a-half on that exam (over multiple days) with no additional accommodation. (DSMF ¶ 10.) Doe claims that he was given a longer extension of time by his high school's special education department, which supervised his test. (PRSMF ¶ 10) The official authorization letter from the ACT, however, clearly states that he was authorized only up to time-and-a-half. (DSMF ¶ 10; Ex. 2, Decl. of Steven Moeller ("Moeller Decl."), Ex. A, ACT Authorization Letter at ACT-00006, Dkt. No. 193-22.)

[3] In testimony prepared for this litigation, however, Dr. Snead, a close friend of Doe's family, admitted that she has not diagnosed Doe as having a learning disability, nor has she run tests on Doe or treated Doe for any type of emotional disorder. (DSMF ¶¶ 30, 32, 36.) Instead, she relied upon reports from other unidentified professionals, Doe's IEP, and her interactions with Doe. (*Id.* ¶ 26.) Later, in 2018 and after this suit was filed, Dr. Snead prescribed Doe medication for attention deficit disorder based, in part, on a diagnosis of Doe by Dr. Nitin Thapar prepared on March 15, 2018. (PRSMF ¶ 34.)

[4] Doe objects to the inclusion of these reports, as well as other instances in which LSAC references the work of outside consultants, on the grounds that the outside consultants never personally met or diagnosed Doe and that LSAC has not qualified them as expert witnesses. The reports themselves, however, make clear that they are based upon a review of the documentation Doe provided and are meant to aid LSAC in determining how to rule on a requested accommodation.

conclusions, the consultants reviewed Doe's request and accompanying documentation. (*Id.*) One consultant notes that nothing in Doe's file supported his request for 200% additional time, while the other remarks that LSAC's proposed accommodation of 100% additional time was already "extremely generous" in light of the quality of Doe's supporting documentation. (DSMF, Ex. 1, Goldberg Decl., Ex. E, Review by Melissa Behrens-Blake, Dkt. No. 193-6; DSMF, Ex. 1, Goldberg Decl., Ex. F, Review by Benjamin J. Lovett, Dkt. No. 193-7.) Accordingly, for the June 2017 LSAT, Doe received 100% additional testing time on all sections, as well as an extended 25-minute break between sections three and four of the test with 15-minute breaks between all other sections. (DSMF ¶ 37; PRSMF ¶ 37.) Doe took the test with those accommodations, although he ended up cancelling his score. (DSMF ¶ 39; PRSMF ¶ 39.)

Doe re-registered to take the LSAT in September 2017 and, once again, he sought testing accommodations. (DSMF ¶ 40; PRSMF ¶ 40.) This time, Doe dramatically expanded his request for accommodation—he sought permission to test over six days with each test section administered over the course of a separate day, use of a computer for the writing sample, and the ability to take the test in a "distraction-free facility." (*Id.*) Doe relied upon the documentation he previously submitted, along with new documentation. The new documentation included a Candidate Statement of Need, as well as an unsigned Qualified Professional: Evidence of Disability form and an unsigned Professional Form: Statement of Need, both dated July 25, 2017 and indicated as from "Dr. Diane Egan." (DSMF ¶ 41; PRSMF ¶ 41.) Doe also included a signed letter from "Dr. Diane L Egan," similarly dated July 25, 2017 ("Initial Egan Letter"). (*Id.*) In these submissions, Dr. Egan claims to have personally examined Doe and recommends that, based on

5

her examination, Doe be given the LSAT over a five-day period (*i.e.*, one section per day).[5] (DSMF ¶¶ 42–43; PRSMF ¶¶ 42–43.)

LSAC denied Doe's request to take the LSAT over five days but again granted more accommodations than it had previously granted. (DSMF ¶ 44; PRSMF ¶ 44.) This time, LSAC not only approved Doe for 100% additional testing time, 15-minute breaks between all sections, and an extended 25-minute break between the third and fourth sections, but it also gave Doe permission to test over two days instead of one and allowed him to use a computer for the writing section. (*Id.*) As with Doe's prior requests, LSAC relied on the written recommendation of outside consultants who reviewed Doe's request and documentation. (DSMF ¶ 45; PRSMF ¶ 45.) Both consultants indicated that there was insufficient documentation for them to determine that Doe met criteria for any disability justifying any testing accommodations, let alone to support granting the five days requested by Doe. (DSMF ¶¶ 46–47; PRSMF ¶¶ 46–47.)

Doe subsequently appealed the denial of some of his requested accommodations through LSAC's internal process. (DSMF ¶ 48; PRSMF ¶ 48.) Included in an appeal letter dated September 5, 2017 was another letter purportedly signed by Dr. Diane Egan reiterating that she had diagnosed Doe and believed there was no good reason to deny his requested

---

[5] This letter, along with another letter ostensibly written by Dr. Egan and submitted to LSAC on September 5, was the subject of a motion for sanctions by LSAC against Doe's prior counsel. (Dkt. No. 38.) In ruling on the motion, the Court considered both the paper record and testimony elicited at an evidentiary hearing. Although the Court declined to find that Doe's prior counsel had engaged in sanctionable conduct in obtaining the Initial Egan Letter, it nonetheless observed that his conduct raised ethical questions. (Mem. Op. at 17, Dkt. No. 165.) As the Court noted, Doe's prior counsel wrote the first draft of the Initial Egan Letter and, in that draft, included several questionable statements that he should have been aware were false. (*Id.*) This included the claims that Dr. Egan had viewed Doe's full medical record (she had not—he provided only his high school IEP) and that Dr. Egan conducted a psychological diagnosis of Doe (she had met with Doe but with his attorney present and, as she later testified, she could not have completed a diagnosis without a confidential evaluation). (*Id.*)

accommodations.[6] LSAC, however, concluded that Doe's appeal from the denial of his requested accommodations was untimely and, on September 13, 2017, confirmed in a letter to Doe's attorney that Doe was approved to take the September 2017 LSAT with the previously granted accommodations. (DSMF ¶¶ 56–57; PRSMF ¶¶ 56–57.) In response, Doe's attorney informed LSAC that Doe would not be taking the September 2017 LSAT and, on September 15, 2017, he filed the initial complaint in this action. (DSMF ¶¶ 58–59; PRSMF ¶¶ 58–59.)

After Doe's request for a preliminary injunction ordering LSAC to allow him more time to take the exam was denied, Doe re-registered to take the December 2017 LSAT. (DSMF ¶¶ 59–60; PRSMF ¶¶ 59–60.) For this exam, he requested three hours of testing time per section, testing over three days, an hour-long break between sections, use of a computer for the writing sample, a private testing room, and testing at a facility within 10 miles of his home. (DSMF ¶ 60; PRSMF ¶ 60.) His request primarily relied upon the documentation provided along with prior requests. (DSMF ¶ 61; PRSMF ¶ 61.) LSAC approved the majority of this request, granting Doe the same accommodations as it provided for the September 2017 exam, along with the use of a private testing room at a center within 10 miles of his home. (DSMF ¶ 62; PRSMF ¶ 62.) Doe took the December 2017 LSAT with these accommodations. (DSMF ¶ 66; PRSMF ¶ 66.) Doe later sought accommodations, some of which were denied, for the February 2018 LSAT (which he took only to cancel his score) and the September 2018 LSAT (which he did not take). (PRSMF ¶ 2; PRSMF, Decl. of Pl. John Doe ("Doe Decl.") ¶ 4, Dkt. No. 196-2.) Eventually, Doe attended and graduated from law school. (DSMF ¶¶ 66, 68; PRSMF ¶¶ 66, 68.)

---

[6] Unlike with respect to the Initial Egan Letter, the Court held that prior counsel had engaged in sanctionable conduct as to the Second Egan Letter. (Mem. Op. at 18, Dkt. No. 165.) Specifically, the Court found that Doe's prior counsel added Dr. Egan's signature to the Second Egan Letter without her knowledge or permission, and then submitted it to LSAC and the Court. (*Id.* at 19.)

Finally, Doe alleges that he was subjected to a "flagging" policy maintained by LSAC pursuant to which it publicly identifies examinees who have received disability accommodations. (Second Am. Compl. ("SAC") ¶ 36, Dkt. No. 183.) This is because, Doe claims, LSAC requires individuals who are dissatisfied with the accommodations they receive to file a lawsuit in court, where their identity will be exposed—in his view, that is effectively the same as a "flagging" policy. (*Id.*) LSAC denies having any such policy or practice, and states that it individually evaluates each litigant's request to proceed anonymously in litigation. (DSMF ¶ 67.) In this case, LSAC opposed Doe's motion to proceed anonymously—the Court, however, granted the motion. (Dkt. No. 116.) Accordingly, Doe has continued to proceed anonymously throughout the course of this litigation.

This litigation has been both lengthy and contentious. In the beginning, Doe sought immediate relief in the form of an injunction and filed several motions in connection with that request. (*See, e.g.*, Dkt. Nos. 6, 13, 20.) The Court denied those motions. (*See* Dkt. Nos. 44, 47.) Additionally, both LSAC and Doe filed motions for sanctions against each other (Dkt. Nos. 38, 68), requiring the development of a record and multiple days of testimony at an evidentiary hearing. (*See, e.g.*, Dkt. Nos. 103, 109.) Following the Court's ruling in favor of LSAC on the cross-motions for sanctions (Dkt. No. 165), Doe's original counsel moved for, and the Court ruled on, reconsideration of that decision. (Dkt. No. 201.) Moreover, during the course of the litigation, the Illinois Supreme Court suspended Doe's original counsel from the practice of law and the Trial Bar of the Northern District of Illinois imposed a reciprocal suspension. (Dkt. No. 141.) Doe's original counsel's suspension was extended after he failed to inform the Court of his suspension and knowingly practiced law over the course of that suspension. (Dkt. No. 150.) In June 2021, new counsel filed an appearance on behalf of Doe. And, in August 2021, the Court

8

granted Doe's unopposed motion to file the now-operative complaint. (Dkt. No. 187.) Soon after, LSAC filed its answer and then the present motion for summary judgment. (Dkt. No. 190).

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the non-movant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). The movant "has the burden of either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cty. Bd. Of Com'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016).

### I. Subject-Matter Jurisdiction Over Doe's Claims

Before turning to the merits of Doe's case, LSAC raises the threshold issue of subject-matter jurisdiction. Federal courts possess limited jurisdiction, *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 550 (7th Cir. 2021), and may not rule on the merits of a case for which they lack jurisdiction. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379 (1981). "[S]ubject-matter jurisdiction must be secure at all times, regardless of whether the parties raise the issue and no matter how much has been invested in a case." *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 853 (7th Cir. 2012).

According to LSAC, the only relief available to Doe under the applicable sections of the ADA is injunctive relief—in other words, Doe cannot seek monetary damages as a matter of law.

9

Yet, according to LSAC, because Doe has already graduated from law school, his request for injunctive relief is moot, divesting the Court of subject-matter jurisdiction over his claims.[7]

### A. Monetary Relief

First, the Court addresses whether Doe may obtain damages for his claims, the first two of which are brought pursuant to Title III of the ADA. Under Title III, a private party may seek only injunctive relief—"damages are not available under Title III." *Scherr v. Marriott Int'l., Inc.*, 703 F.3d 1069, 1075–76 (7th Cir. 2013); *see also Morgan v. Autozone Parts, Inc.*, No. 17-cv-2838, 2017 WL 8204096, at *2 (N.D. Ill. Dec. 12, 2017) (explaining that courts consistently hold that ""plaintiffs seeking relief under Title III may only request injunctive relief for current or imminent discrimination" because "compensatory damages are not available to private parties") (citations omitted). Thus, because both Count I (brought pursuant to 42 U.S.C. § 12189) and Count II (brought pursuant to 42 U.S.C. § 12182) fall under Title III of the ADA, Doe's claims for damages must fail.

In contrast, Count III (brought pursuant to 42 U.S.C. § 12203) falls under Title V. However, 42 U.S.C. § 12203, which bars retaliation against or interference with an individual who has exercised their rights under Titles I–III of the ADA, incorporates the remedies available for that underlying violation. 42 U.S.C. § 12203(c). Accordingly, Doe's claim for retaliation, premised upon the violations of Title III alleged in Counts I and II, similarly cannot support a claim for damages. *See Kramer v. Bank of Am. Sec., LLC*, 355 F.3d 961, 965–66 (7th Cir. 2004) (holding that compensatory and punitive damages are not available for a plaintiff bringing an

---

[7] The Court notes that Doe fails substantively to oppose LSAC's arguments concerning subject-matter jurisdiction is his response.

ADA retaliation claim against an employer because Title I, which governs the alleged underlying violation, does not incorporate compensatory or punitive damages).

Therefore, Doe may only seek injunctive relief. He cannot, as a matter of law, sustain a claim for monetary damages.

### B. Injunctive Relief

The Court next turns to whether it has subject-matter jurisdiction over Doe's claims for injunctive relief. LSAC contends that the Court must dismiss Doe's request for injunctive relief as moot. "Article III of the Constitution limits federal courts' scope of judicial review to live cases and controversies." *Medlock v. Trs. of Indiana*, 683 F.3d 880, 882 (7th Cir. 2012). As part of that requirement, "[p]laintiffs must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." *DND Int'l., Inc. v. Fed. Motor Carrier Safety Admin.*, 843 F.3d 1153, 1158 (7th Cir. 2018) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). Critically, "the requirement of an actual controversy must exist not merely at the initiation of the action, but throughout all stages of the litigation." *Id.* (citations omitted).

For actions seeking injunctive relief, this requirement "ordinarily means that, once the threat of the act sought to be enjoined dissipates, the suit must be dismissed as moot." *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006); *see also Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011) ("Accordingly, if an event occurs while a case is pending that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the case must be dismissed." (internal quotation marks omitted)). Put another way, "the doctrine of mootness can be described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must

11

continue throughout its existence (mootness)." *Friends of the Earth, Inc., v. Laidlaw Env. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997)); *see also Milwaukee Police Ass'n v. Bd. of Fire & Police Com'rs of City of Milwaukee*, 708 F.3d 921, 928 (7th Cir. 2013) (explaining how "when a party with standing at the inception of the litigation loses it due to intervening events, the inquiry is really one of mootness") (internal quotation marks omitted).

For instance, a plaintiff's graduation from the educational institution against which they seek an injunction will often moot the claim. *See, e.g.*, *H.P. by & Through W.P. v. Naperville Cmt. Unit Sch. Dist. #203*, 910 F.3d 957, 960 (7th Cir. 2018) (affirming that the plaintiff's claims for injunctive relief brought under the ADA and against her high school were mooted when she graduated); *Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 991(7th Cir. 2000) (explaining that a plaintiff's request for injunctive relief relating to accommodations on his high school basketball team was mooted by his graduation). Similarly, and most relevant to the present case, courts have dismissed as moot lawsuits brought against standardized testing entities for failing to grant requested testing accommodations where the plaintiff will not be retaking the test. *See Scheiner v. ACT Inc.*, No. 10-CV-0096 (RRM)(RER), 2013 WL 685445, at *5 (E.D. N.Y. Feb. 24, 2013) (finding that plaintiff's claim against the ACT was "rendered moot by the fact that plaintiff currently attends college and therefore will never again need to take the ACT examination"); *Christian v. New York State Bd. Of Law Examiners*, 899 F. Supp. 1254, 1256 (S.D.N.Y. 1995) (holding that plaintiff's ADA claims were moot where she had passed the bar exam and would not be re-taking it again). As these cases demonstrate, because a plaintiff who no longer attends the offending educational institution (and will not return) or will never again have to take a test for

12

which they sought accommodations has no way of demonstrating "any real or immediate threat that [they] will be wronged again," the injunctive remedy is unavailable. *Lyons*, 461 U.S. at 103.

Here, Doe seeks an injunction generally barring LSAC from engaging in discriminatory practices against him and others, and from refusing to ensure that the LSAT is administered in a manner accessible to him, specifically by failing to grant him a proper extension of time. When Doe first filed this litigation and sought a preliminary injunction, there was no dispute that he had a live controversy. After all, Doe was actively seeking to take the exam. Now, however, Doe has already been admitted to and graduated from law school, meaning that there is no reason for him to re-take the LSAT, a test used only for law school admission. Thus, Doe's own educational achievement has removed the threat that the requested injunction seeks to redress. His claim is therefore moot.

Additionally, Doe requests an order directing LSAC to cease its alleged policy of "flagging" the scores of students who receive disability accommodations, including his own. As a preliminary matter, the Court notes that although the injunction Doe seeks appears to be structured to provide relief on a class-wide scale, this is not a putative class action. Doe has brought this case solely on his own behalf. Moreover, regarding Doe's individual claim that LSAC sought to "flag" his scores, the Court granted him permission to proceed under a pseudonym and his identity has not been revealed through this lawsuit. In other words, although Doe conceivably has a claim to past injury with respect to LSAC's denial of past requests for accommodation, he has not suffered the alleged harm of having his scores "flagged" during the admission process. Accordingly, Doe's claim for injunctive relief as to LSAC's alleged flagging policy is also moot.

For these reasons, Doe's claims for injunctive relief are moot and the Court no longer has subject-matter jurisdiction.[8]

## II. Merits of Doe's Claims

In the alternative, LSAC contends that Doe's claims fail on the merits. Given that the Court has already determined that it lacks subject-matter jurisdiction over Doe's claims, it need not address this issue. Nonetheless, even if they were not moot, each of Doe's claims would fail on the merits as well.[9]

To start, Doe fails to raise any genuine issue of fact as to whether he received reasonable accommodations.[10] Doe argues in opposition to summary judgment that anything less than a 300–400% extension of testing time is unreasonable or, at least, that there is a dispute of fact as to whether it was reasonable. Typically, the determination as to whether an accommodation is reasonable or not is a fact determination reserved for a jury—however, courts will grant summary judgment on the issue where a plaintiff fails to bring forward evidence of the unreasonableness of the accommodations provided. *See, e.g., Coffey-Sears v. Lyons Twp. High Sch. Dis. 204*, No. 15-cv-08643, 2017 WL 1208439, at *8 (N.D. Ill. Mar. 31, 2017) ("This failure to provide evidence of the unreasonableness of [the defendant's] accommodation sinks [the plaintiff's] claims." (citing

---

[8] Although LSAC asks for dismissal with prejudice, "a dismissal on mootness grounds is a dismissal for lack of jurisdiction" that must be without prejudice. *Bernstein v. Bankert*, 733 F.3d 190, 224 (7th Cir. 2013) (citations omitted).

[9] Doe cites no relevant caselaw in support of his claims. Instead, he relies solely on the factual record and his reference to *Endrew F. v. Douglas County School District RE-1*, 137 S. Ct. 988 (2017). In *Endrew F.*, the Supreme Court addressed the question of what standard an IEP must satisfy for a school to meet its substantive obligation under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq. Id.* at 999. Here, however, Doe raises his claims under the ADA, an entirely different statute. Doe fails to explain the application of the analysis in *Endrew F.* to the issues presented in this case.

[10] Because Doe fails on the merits as to other aspects of his claims, there is no need for the Court to address whether there is a disputed issue of fact as to whether Doe qualifies as "disabled" under the ADA.

14

*Beck v Univ. of Wis. Bd. Of Regents*, 75 F.3d 1130, 1136 (7th Cir. 1996))). And in this case, LSAC has provided convincing evidence that, far from merely being sufficient, the accommodations it provided exceeded the accommodations that Doe had historically been granted on the basis of notably weak documentation.[11]

Critically, contrary to Doe's repeated insistence that he had received unlimited time on prior exams, the documentation provided by Doe to LSAC clearly establishes that Doe had never formally been authorized to receive anything more than 50% extra time in both high school and college. For instance, Doe points to his IEP as evidence that he received **unlimited** time when, in fact, the IEP only notes that he received **extended** testing time. Indeed, the IEP explicitly notes that, for certain tests, Doe was to receive only time and a half. Similarly, although Doe asserts that he received unlimited time on the ACT, authorized letters from the ACT showed that he was only approved for 150% extra time.[12] That the proctor overseeing Doe independently determined that the ACT's authorization of time-and-a-half was insufficient is irrelevant to LSAC's analysis, which looked not to what accommodations Doe was actually given in practice but to what accommodations had previously been deemed reasonable in light of his documented disability.

---

[11] Although the Snead and Egan letters purport to diagnose Doe with a specific disability, neither doctor ever conducted a formal evaluation of Doe. And at least one letter (the Second Egan Letter) was not even written by Dr. Egan. The Court notes that it was only in Doe's last attempt to receive testing accommodations—for the September 2018 LSAT—that he provided evidence of a formal diagnosis by a qualified professional (Dr. Andrew Suth). (Ex. A, Rep. by Dr. Andrew Suth, Dkt. No. 197;, Ex. B, Aug. 8, 2018 Denial of Request for Accommodations, Dkt. No. 197.) In Dr. Suth's report, he does indicate that, based on his professional opinion, an extension of 100% time was insufficient to accommodate Doe's disability, instead recommending Doe receive 300–400% extended testing time. (Ex. A, Rep. by Dr. Andrew Suth at 33.) But the merits of Doe's claim for failure to accommodate relate to those requests made prior to the filing of this lawsuit.

[12] To support this contention, Doe relies solely on his own declaration that he received unlimited time for the ACT. (PRSMF, Doe Decl. ¶ 5.) That declaration contradicts his own email from February 2017 to DePaul University's student disability center stating that he had received 100% extra time on the ACT. (DSMF ¶ 11.)

Nonetheless, even though the documents before it indicated that Doe had only ever received 50% extra testing time, LSAC granted him 100% extra time along with numerous other accommodations. Put simply, the Court struggles to see, and Doe does not explain, how a reasonable trier of fact could find that LSAC, which approved *more* time than Doe had ever yet received, failed to provide a reasonable accommodation.

Next, the Court finds that Count II, which arises under 42 U.S.C. § 12182, fails as a matter of law. Section 12182 prohibits discrimination by "public accommodations," a definition for which is provided in 42 U.S.C. § 12181. LSAC, however, does not fall within any of the categories listed under this definition. *See* 42 U.S.C. § 12181(7) (listing specific private entities considered "public accommodations" under the ADA, and not including any standardized test providers). This claim, therefore, must also fail.

Finally, Doe provides no factual support for his claim for retaliation under Count III—thus, it too must fail. Doe's primary contention is that LSAC retaliated against him by "flagging" his scores as being obtained with an extension of time or other accommodation. LSAC, however, has submitted a sworn declaration stating that no such policy exists, and Doe provides no evidence to suggest otherwise. Contrary to Doe's position, the mere fact that LSAC resisted a request to proceed pseudonymously in this specific lawsuit does not, on its own, indicate a systematic policy of "flagging" scores. Nor does Doe's production of a consent decree from 2014 (long before the events underlying this action occurred), in which LSAC was permanently enjoined from annotating the score reports of those who received extended test time provide support for any claim that LSAC violated that consent decree, let alone that LSAC somehow flagged scores by

requiring litigants to state their names.[13] Put simply, Doe cannot simply rest upon his own allegations as to the existence of a flagging policy at this stage in the litigation. As the Seventh Circuit has explained, "summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Thus, because Doe fails to provide any evidentiary basis for his claims, it must fail.

In his response, Doe also appears to raise two entirely new bases for his retaliation claim—first, that the proctors were rude and mean to him during the administration of the February 2018 LSAT and, second, that his request to access his iPhone, food, and water and snacks during the February 2018 exam was denied even though it had been previously granted. As a preliminary matter, these claims are not properly before the Court. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (describing the "axiomatic rule that a plaintiff may not amend his complaint in his response brief"). Regardless, Doe's claims still fail on the merits—again, Doe's claims rest solely on his own allegations that the proctors' behavior and the denial of his request were due to the filing of the present action. He provides no evidence that either the proctors or those in charge of dealing with requests for accommodation were even aware of the litigation, let alone that their actions were motivated by it. Because Doe "cannot rely on mere conclusions and allegations to create factual issues" at the summary judgment stage, his additional claims for retaliation would still fail even if they could be considered by the Court. *Secs. Exch. Comm'n v. Nutmeg Grp., LLC*, 162 F. Supp. 3d 754, 762

---

[13] The Court notes that the decision as to whether a plaintiff may proceed anonymously rests not with LSAC, but with the Court. *See Doe v. Vill. Of Deerfield*, 819 F.3d 372, 376–77 (7th Cir. 2016) (emphasizing that the granting requests to proceed anonymously are disfavored).

(N.D. Ill. 2016) (citing *Balderston v. Fairbanks Morse Eng. Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003)).

Thus, for the reasons described above, the Court finds that Doe's claims would fail on the merits even if they were not moot.

## CONCLUSION

For the reasons stated above, LSAC's motion for summary judgment (Dkt. No. 190) is granted. Doe's claims are dismissed without prejudice for lack of subject-matter jurisdiction because his claims for injunctive relief are now moot.

ENTERED:

Dated: September 30, 2022

_____
Andrea R. Wood
United States District Judge